# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 18, 2014

Lyle W. Cayce
Clerk

No. 12-20803

EL PASO CGP COMPANY, L.L.C.; EL PASO, L.L.C.,

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA, also known as United States Attorney's
Office,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The plaintiff and taxpayer, El Paso CGP ("El Paso"), appeals the district court's grant of summary judgment to the defendant, the Internal Revenue Service ("IRS") denying El Paso's tax refund claim.  El Paso contends that the IRS, in settling a tax dispute with El Paso involving a refund and set-off, failed to adhere to the assessment and collection procedures provided by the Internal Revenue Code (the "Code") when setting off El Paso's deficiency against its refund.  This failure, in El Paso's view, bars the IRS from collecting unpaid taxes from El Paso.  In response, the IRS argues that under the variance doctrine, the district court lacked jurisdiction over the refund suit or, alternatively, that the

No. 12-20803

IRS complied with the procedures relevant to the transaction.  We hold that the district court had jurisdiction over the claim, and that the IRS acted within its authority by setting off deficiencies against refunds that were owed to El Paso. Accordingly, we AFFIRM the judgment of the district court.

I.

This appeal is centered on El Paso's 1986 corporate tax return.  In that return, El Paso claimed various investment tax credits.  Because the amount of credits available to El Paso in 1986 exceeded the allowable limit for the year, El Paso carried some of those credits forward to the 1987-1990 tax years, lowering El Paso's tax liability in those later years.  The IRS later initiated an audit of El Paso's 1986 return and disallowed some of the tax credits claimed in that return. The disallowance of these credits for 1986 increased El Paso's tax liability for that year.  In April 2000, El Paso made an advance payment of approximately $51 million to the IRS to cover the 1986-1990 tax deficiencies resulting from the audit.

In March 2002 – as a result of the audit and subsequent discussions between El Paso and the IRS – the parties executed a Form 870-AD ("Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment").  In this form, El Paso agreed to the assessment and collection of an income tax deficiency for its 1986 tax year as a result of the investment tax credit disallowance, but reserved the right to later file a claim for a refund for the 1986 tax year.

In December 2002, El Paso exercised this right and filed a refund claim of $18,047,020 for the 1986 tax year  (the "Refund Claim").  Under IRS policy, El Paso was allowed to replace the disallowed investment tax credits with other investment tax credits that had originally been carried forward to later tax years. This rearrangement of tax credits resulted in an overpayment by El Paso of approximately $18 million for the 1986 taxable year.  It also created

deficiencies in the 1987-1990 tax years as El Paso now had fewer tax credits to apply to these years. Following El Paso's Refund Claim, the parties entered into discussions to determine the amount of El Paso's overpayment for 1986, as well as the precise amounts of the deficiencies that had resulted in subsequent tax years. In 2005, El Paso and the IRS reached a tentative agreement on the amounts each party was due, or owed, for each year. They then executed another Form 870-AD and a Form 866-c ("Agreement as to Final Determination of Tax Liability"). These two forms, executed in July 2005, constitute the "Closing Agreement" between the parties.

Thus, the Closing Agreement set out the final determination of the amount El Paso overpaid for 1986 as well as the amount of the liabilities that El Paso owed for the 1987-1990 tax years. In September 2005, the IRS made a partial payment of the 1986 refund amount to El Paso. The IRS, however, withheld the balance of the refund amount and informed El Paso that the additional money would be used to satisfy the deficiencies for the years 1987-1990 laid out in the Closing Agreement. El Paso received an additional amount from the IRS in November 2005 after the parties agreed that the IRS had used an improper start date in calculating the interest due El Paso.

A year after the Closing Agreement was executed, in August 2006, El Paso sent a precisely timed memorandum to the IRS claiming that the deficiencies for 1987-1990 must be refunded to El Paso because the IRS had failed properly to assess those deficiencies before the just-expired one-year statute of limitations. El Paso argued that because the default statutory period of limitations had run, the IRS had to follow the mitigation rules (allowing for the reopening of a closed tax year through an assessment within one year of a closing agreement) in order to collect deficiencies from those years. El Paso took the position that, because the IRS had failed to follow these mitigation procedures, the IRS must refund the money the IRS had retained to offset El Paso's liabilities, as provided and

No. 12-20803

agreed to in the Closing Agreement. The IRS treated this memorandum as an informal refund claim and denied it.

## II.

El Paso filed this refund suit in the U.S. District Court for the Southern District of Texas in December 2010. In moving for summary judgment, the IRS made two arguments to the district court. First, the IRS argued that the district court lacked jurisdiction over El Paso's claim. Second, the IRS argued that if the district court had jurisdiction, the IRS was entitled to offset the deficiencies from 1987-1990 against El Paso's 1986 overpayment.

The district court referred the case to a magistrate judge and, after hearing oral arguments, the magistrate judge issued a recommendation that the district court grant the IRS's motion for summary judgment. The magistrate judge concluded that the district court did not have jurisdiction over the claim for two reasons. First, the magistrate judge noted that I.R.C. § 7422(a) requires that a taxpayer first file a timely claim for refund with the IRS in order to establish district court jurisdiction over the refund suit. The magistrate judge recommended rejecting El Paso's argument that the 2002 Refund Claim supported jurisdiction, noting that the Refund Claim had been disposed with finality by the IRS in the 2005 Closing Agreement.[1]

As an alternative jurisdictional ground for dismissal of the refund suit, the magistrate judge suggested that the district court lacked jurisdiction because El Paso's suit contravened the variance doctrine. To assert a court's jurisdiction over a claim for refund, the variance doctrine requires that the grounds for recovery advanced in federal court must be the same as advanced before the IRS. The magistrate judge concluded that the grounds for recovery presented in federal court arose from the IRS's set-off, an act that occurred three years *after*

---

[1] El Paso expressly disavowed the 2006 memorandum as a basis for jurisdiction.

No. 12-20803

the filing of El Paso's Refund Claim before the IRS. Thus, El Paso's Refund Claim could not have rested on the same grounds for recovery as the federal suit because those grounds for recovery had not occurred at the time of the Refund Claim.

In addition to recommending that the district court hold that it lacked jurisdiction, the magistrate judge addressed the merits of El Paso's claim. The magistrate judge again recommended that the district court side with the IRS. The magistrate judge concluded that Supreme Court precedent allowed the IRS to use tax deficiencies to offset refund amounts which were owed to the taxpayer. Additionally, the magistrate judge recommended that the Closing Agreement be treated as a "package deal." That is, El Paso should not be allowed to get the benefits of the deal (the refund) without also shouldering the burdens (the liabilities) it imposed.

El Paso objected to the recommendations of the magistrate judge, but the district court nonetheless adopted them and entered judgment for the IRS. El Paso then brought this appeal.

III.

This case presents a question of whether the IRS complied with the procedure established by the Code. El Paso readily admits that it owes the IRS money. El Paso, however, argues that the Code and its accompanying regulations lay out the steps that the IRS must take in order to be able to collect that money. Before determining whether the IRS adequately followed these steps, we must first address the jurisdictional challenges that the IRS raises.

Subject-matter jurisdiction presents a question of law that this court reviews de novo. *See Wagner v. United States*, 545 F.3d 298, 300 (5th Cir. 2008). Suits for tax refunds are governed by I.R.C. § 7422(a), which requires that a claim for refund comply with "the regulations of the Secretary established in pursuance thereof." The relevant regulation requires that a claim for refund "set

5

forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. . . ." Treas. Reg. § 301.6402-2(b)(1). This regulation codifies the variance doctrine. Under this doctrine, "a taxpayer is barred from raising in a refund suit grounds for recovery which had not previously been set forth in its claim for a refund." *Mallette Bros. Const. Co., Inc. v. United States*, 695 F.2d 145, 155 (5th Cir. 1983). "The alleged error must be clearly and specifically set forth in the refund claim. A generalized plea of error will not suffice." *Id.* "All grounds upon which a taxpayer relies must be stated in the original claim for refund. . . . Anything not raised at that time cannot be raised later in a suit for refund." *Alabama By-Products Corp. v. Patterson*, 258 F.2d 892, 900 (5th Cir. 1958).

Applying this admittedly explicit and unyielding language, the IRS asserts that this court has no jurisdiction to litigate this 2002 Refund Claim because El Paso now raises on appeal grounds that were not raised before the IRS. In short, this suit is barred by the variance doctrine. The IRS points out that El Paso's Refund Claim, because it was filed in 2002, could not possibly have raised the argument it now advances because El Paso's argument raises IRS conduct occurring three years later – that is, the IRS's 2005 offset.

Although the variance doctrine has been expressed in uncompromising terms, courts have not always been so dogmatic in applying it. Sensibly, courts have explicitly carved out an exception in cases where the Government's unilateral action itself creates the substantial variance. *See, e.g., Shore v. United States*, 26 Cl. Ct. 826, 828-29 (1992) (rejecting a variance doctrine argument where the Government created the substantial variance from the initial claim); *Brown v. United States*, 427 F.2d 57, 62 (9th Cir. 1970) (holding that taxpayers "cannot be foreclosed from responding" to new issues created by the Government after the filing of the initial refund claim).

No. 12-20803

The IRS correctly points out that these cases involve situations in which the Government raises new defenses or counterclaims for the first time after the claim is in litigation. In allowing the taxpayer flexibility to respond, courts recognize that the Government cannot use the variance doctrine to straightjacket the taxpayer when the Government unexpectedly changes its litigation strategy. We see no reason why the rationale underlying this exception to the variance doctrine does not apply here. El Paso filed a refund claim based on the information it had in 2002. The IRS took actions in 2005 in which El Paso was refunded some of its overpayment, but not all because deficiencies in other years were offset against that amount due El Paso. El Paso has now brought this suit to obtain the entire amount that it claimed in its 2002 Refund Claim. As in the cases cited above, the variance doctrine does not bar this action when the only variance in El Paso's claim arises from alleged IRS failures to follow proper procedures of which El Paso was unaware when those failures occurred. For these reasons, we are unwilling to apply the variance doctrine to deprive the taxpayer from asserting federal court jurisdiction over this suit for refund.[2]

## IV.

So, we have jurisdiction over this refund suit, which brings us to the merits of El Paso's claim. We review a district court's grant of summary judgment de novo. *Kornman & Associates, Inc. v. United States*, 527 F.3d 443,

---

[2] The IRS also argues that this court does not have jurisdiction over this case based on I.R.C. § 7422(a), which requires that a taxpayer file a timely refund claim prior to filing suit for the refund. The IRS argues that El Paso has not complied with this section because the only refund claim that could support jurisdiction, the 2002 Refund Claim, was extinguished with finality by the Closing Agreement. In our view, this case can properly be characterized as seeking to enforce the terms of the Closing Agreement. El Paso's central claim is that the IRS did not comply with the applicable provisions of the Code when enforcing the Closing Agreement. Because even the IRS admits that we have jurisdiction over a suit to enforce a Closing Agreement, we need not determine whether the Refund Claim qua refund claim was extinguished by the Closing Agreement.

No. 12-20803

450 (5th Cir. 2008). El Paso's argument on the merits is straightforward: The IRS is required to assess a tax within the applicable period of limitations; the IRS failed to do this; and by failing to do so, the IRS has no authority to collect or offset the tax deficiencies. El Paso is therefore entitled to a full refund that includes the deficiencies that were set off; or reduced to numbers, El Paso is due $28,894,529 with statutory interest. This is the argument that the IRS defends against.

A.

The IRS begins its response by arguing that the Code provides express authority for this set-off. The language of the Closing Agreement makes clear that the parties were agreeing on the amount of liabilities, and the Code allows the IRS to set off liabilities against overpayments. *See* I.R.C. § 6402(a) ("In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment . . . against any liability. . . ."). Because an assessment is not required to create a tax liability, the IRS asserts that the offset of the tax liability against the refund that was due El Paso was proper without an assessment. The IRS's argument, however, ignores the restriction on this power to offset liabilities for tax periods outside the statutory period of limitations. The tax years for which the deficiencies arose (1987-1990) were closed tax years.

The Code, however, does provide a particular method for the IRS to reopen closed tax years – the mitigation provisions. As they apply here, these mitigation provisions allow the IRS to reopen closed tax years following a closing agreement between the parties by assessing deficiencies or refunding overpayments within one year of the closing agreement. *See* I.R.C. §§ 1311-1314. If the IRS complied with the mitigation provisions, which would have reopened the statute of limitations for the barred years, then § 6402(a) could provide the

8

No. 12-20803

IRS the statutory authority for the set-off. We now turn to the question of whether the IRS complied with the mitigation provisions.[3]

B.

The IRS contends that it complied with the mitigation provisions, citing I.R.C. § 1314(b), which provides that an adjustment (the reopening of a closed tax year) can be made by "assessing and collecting, or refunding or crediting," the amount of the adjustment within one year of the Closing Agreement. While agreeing that § 1314(b) provides the method by which the IRS could reopen the closed tax years, El Paso rebuts the IRS argument, contending that the IRS failed to properly do so in this case. We are now at the crux of the disagreement between the parties.

Section 1314(b) allows the IRS to perform an adjustment by either "assessing and collecting" or "refunding or crediting" the amount of the adjustment. The parties agree that "assessing and collecting" applies to collecting deficiencies – that is, the IRS must "assess and collect" deficiencies – and the "refunding or crediting" applies to overpayments – that is, the IRS must "refund or credit" overpayments. The dispute is which of these two avenues – "assessing and collecting" or "refunding or crediting" – provides the proper method for the IRS to deal with El Paso's claim.

---

[3] The IRS argued, before both this court and the district court, that the mitigation provisions do not apply here and instead contends that this appeal should be decided on the grounds that the set-off was within the IRS's authority in the light of the Closing Agreement between the parties. In the alternative, the IRS maintains that, if the mitigation provisions do apply, it has complied with those provisions.

El Paso contends that the mitigation provisions apply, the IRS failed to comply with them, and El Paso is therefore entitled to the refund. We need not resolve this dispute for the following reason: Whether the mitigation provisions apply or not, the IRS prevails because it complied with the mitigation provisions, and El Paso supplies no alternative grounds on which it should prevail notwithstanding this compliance. We therefore address El Paso's arguments assuming without deciding the mitigation provisions apply to this situation.

No. 12-20803

The IRS argues that it can look at the entire period covered by the Closing Agreement (1986-1990), determine whether for that entire period there was a net deficiency or a net overpayment, and then comply with the mitigation provisions by either assessing and collecting (if the total is a net deficiency), or refunding or crediting (if there is a net overpayment). Because there is a net overpayment here, the IRS contends, as discussed in note 3, that it complied with § 1314(b) by refunding that amount to El Paso within one year of the Closing Agreement.

In contrast, El Paso contends that the IRS is required to look at each individual tax year and, in individual years where there was a deficiency, (i.e. 1987-1990) "assess and collect" the taxes for each year individually; similarly, El Paso argues that the "refund or credit" language is only relevant *for individual tax years* in which there is an overpayment. Because the IRS failed to assess and collect the deficiencies for the 1987-1990 taxable years within one year of the Closing Agreement, El Paso contends that the IRS has no claim to those amounts. The question is whether the IRS, when acting on the overpayments and deficiencies agreed to in a closing agreement, must act on each taxable year individually or may comply with § 1314(b) by treating the Closing Agreement as a "package deal." Said another way, the issue is: what does § 1314(b) require the IRS to do here.

1.

A statute's meaning begins with its plain language. *See Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 175 (5th Cir. 2011). The relevant portion of § 1314(b) states:

> The adjustment authorized in section 1311(a) shall be made by assessing and collecting, *or* refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may

10

be, for the taxable year *or years* with respect to which an amount is ascertained under subsection (a). . . .

(Emphasis added.)  In our view, this language allows an adjustment covering multiple tax years.  We reach this conclusion acknowledging that the amount of the adjustment must be determined for each individual taxable year.  *See* I.R.C. § 1314(a) ("In computing the amount of an adjustment under this part there shall first be ascertained the tax previously determined *for the taxable year* with respect to which the error was made.") (emphasis added).  In our view, the language of § 1314(b) allows the IRS to make one total adjustment, covering multiple tax years; but the one adjustment amount first must be determined on the basis of each tax year separately.  This is precisely what occurred here.  The Closing Agreement lays out the adjustment amounts for each individual tax year, and the IRS implemented the adjustment for all the years by refunding to El Paso the amount of the net overpayment.[4]

2.

That the plain language of § 1314(b) calls for deficiencies to be "assess[ed] and collect[ed]" further supports the IRS's position by tying together an assessment and collection.  This connection suggests that the assessment is meant to occur in cases where collection activities might be required.  If the Closing Agreement contains a net overpayment – as it does here – the IRS will not have to collect the deficiencies for the individual years because the IRS already holds the taxpayer's money to cover the deficiency.

This connection between an assessment and the IRS's collection powers is apparent throughout the Code, including in the regulations related to closing agreements.  *See* Treas. Reg. § 301.7121-1(d)(2) ("Any tax or deficiency in tax

---

[4] Here, the net overpayment from the Closing Agreement was treated as a single amount.  As El Paso had no other outstanding taxes due, there was no occasion for the IRS to "credit" any amount of the overpayment.  Thus, the IRS refunded to El Paso the full amount determined by the Closing Agreement.

No. 12-20803

determined pursuant to a closing agreement shall be assessed and collected, and any overpayment determined pursuant thereto shall be credited or refunded. . . ."). This connection has also been recognized by courts. *See Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063, 1064 n.1 (3d Cir. 1991) ("[I]t is the assessment, and only the assessment, that sets in motion the collection powers of the IRS. . . ."). From these authorities, it is clear that a primary function of an assessment is to lay the necessary groundwork for the IRS to exercise its collection authority. That is not to say, dogmatically, that an assessment is only required when the IRS uses its formal collection powers. It does, however, fully support the IRS's argument that an assessment is unnecessary when the IRS, as here, already holds adequate money from the taxpayer to cover the deficiencies.

3.

El Paso argues against this reading of the statute, contending that it violates the established norm that tax years must be treated as insular units. This insulation prevents the IRS from commingling overpayments and deficiencies across tax years to arrive at a net amount due to the taxpayer or owed to the IRS. *See id.* at 1066 ("Under the relevant tax laws, however, the IRS is not empowered to arrive at a net deficiency or overpayment and send the taxpayer a bill or refund for the net amount. Instead, the IRS must separately assess each year's deficiency and separately refund each year's overpayment.").

We have already recognized the general rule that each individual tax year must be treated individually. When the Government finds deficiencies in one tax year and overpayments in another, it may not, on its own initiative and without proper assessment, send the tax payer a single bill for the net deficiency. In holding that the IRS acted permissibly in this case, we are not casting doubt on this principle, or on the opinion of the Third Circuit in *Philadelphia & Reading*. To be sure, however, this case fits within an exception to the broad

12

principle that the Third Circuit recognized: "[T]he taxpayer and the IRS can reach an agreement that permits the IRS to pay out or recover only the net overpayment or deficiency." *Id.* Here, the Closing Agreement permitted the IRS to pay out only the net overpayment. The Closing Agreement did not require the IRS to refund the entire overpayment to El Paso, then require the IRS to engage in a separate effort to collect the deficiencies through formal collection procedures. El Paso acknowledges this point. It only argues that the IRS did not take the necessary steps, i.e. assessing year-by-year the tax deficiencies, prior to refunding to El Paso its overpayment, an overpayment which had been reduced by the set-off deficiencies.[5]  This agreement fits this case into the exception recognized by the Third Circuit.

V.

Our holding is not a broad one. We simply hold that where the IRS and a taxpayer enter into a closing agreement, which sets out the liabilities and overpayments of the taxpayer, the IRS can comply with the mitigation provisions of the Code by "assessing and collecting" any net deficiency from the years covered by the closing agreement, or by "refunding or crediting" any net overpayment for those years. This case involves "refunding" an overpayment. Moreover, the Government refunded El Paso's net overpayment within one year of the execution of the Closing Agreement. The "refunding" thus occurred within the applicable statutory period of limitations as per the mitigation provisions.[6]

---

[5] The time line of the events of this case makes evident that El Paso is only arguing the procedural point and not the IRS's general authority under the Closing Agreement to net out the payments. The IRS made the partial refund to El Paso in September and November 2005; El Paso did not raise a challenge to the set-off until August 2006. Had El Paso not been expecting the set-off, it is obvious to us that upon receiving several million dollars less than expected, El Paso would hardly have waited so long to raise the issue. As explained at oral argument, El Paso only raised a challenge to the set-off upon finding out that an assessment of the deficiencies had not taken place.

[6] Because we hold that the IRS complied with the mitigation provisions, we need not reach the IRS's other arguments in support of its actions.

13

No. 12-20803

For the foregoing reasons, we hold that we have jurisdiction over El Paso's refund claim and that the IRS acted within its authority in applying El Paso's deficiencies to offset its overpayment. Accordingly, the judgment of the district court is

AFFIRMED.