Halpern and Lauber, JJ., concurring: We agree that the February 2013 letter from the Internal Revenue Service (IRS) Whistleblower Office (Office) embodies a “determination regarding an award” within the meaning of section 7623(b)(4) and that, because petitioners filed a petition within 30 days of that letter, the Court has jurisdiction over this controversy. We therefore concur in the result reached by the opinion of the Court. We write separately because we have concerns about certain portions of the analysis in the opinion and about how it treats our precedents in Friedland v. Commissioner, T.C. Memo. 2011-90, 101 T.C.M. (CCH) 1422 (Friedland I), and Friedland v. Commissioner, T.C. Memo. 2011-217, 102 T.C.M. (CCH) 247 (Friedland II) (collectively, Friedland cases). Section 7623(b)(4) provides that “[a]ny determination regarding an award * * * may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).” Unlike most statutory provisions granting us jurisdiction, section 7623(b)(4) does not prescribe any particular form of notice to the taxpayer or would-be petitioner. Indeed, the statute does not literally require written notice of any kind; it simply requires the making of a “determination.” The statute’s failure to specify an unambiguous “ticket to the Tax Court” has created serious interpretative and practical problems, both for whistleblowers and for the Court. These problems have been compounded by the Office’s habit — commendable in many respects — of communicating frequently with claimants during the claims investigation process. These communications have employed verbiage that is sometimes inconsistent about the status of the claim under review. In some cases, this has caused claimants to file premature petitions in our Court, fearing that the 30-day jurisdictional deadline would be triggered by an ambiguous communication that might later be deemed a “determination.” In other situations, such as in the Friedland cases and the instant case, claimants have engaged in further discussions with the IRS after receiving the initial letter. They may then find themselves confronted with the assertion that they should have petitioned the Court immediately in response to the first letter and that their claims are now time barred. Our main concern with the opinion of the Court is the way it handles the Friedland cases, whose facts resemble those here. If the Court is going to hold that it has jurisdiction on the basis of the February 2013 letter notwithstanding the prior mailing of the 2012 letters, it must either distinguish the Friedland cases or disapprove them. The Court declines to do the former. And while not explicitly overruling those precedents, it does do the latter, stating: “[T]he Court will not follow the holdings in the Friedland cases to the extent they state or imply that it is not possible for the Whistle-blower Office to issue, as to a given claim, more than one ‘determination’ on which our jurisdiction might be based.” See op. Ct. p. 283. We disagree with this action for two reasons. First, the Friedland cases are distinguishable on their facts and, accordingly, in order to find jurisdiction here, there is no need to overrule or disapprove them. Second, it is error to disapprove these cases because the Court has not shown that they were wrongly decided. In Friedland I, 101 T.C.M. (CCH) at 1422, the Office issued the claimant a letter stating that the claim had been evaluated and rejected. The claimant made further inquiries, by letter and telephone, and he supplied “additional information” regarding his claim. The record in Friedland I indicates that this additional information consisted, not of new factual material, but of a letter attaching legal authorities. The Court described this information as “gratuitous[].” Ibid. The Office in Friedland I issued subsequent letters to the claimant “confirming that * * * [his] additional information had been received and considered but stating that the ‘determination remains the same despite the information contained’” in the followup letters. 101 T.C.M. at 1422-1423. The Court held that the first letter constituted a “determination” denying the whistleblower’s claim and that “[t]he subsequent three letters merely reaffirmed the initial determination in the first letter.” Id. at 1423. Because the claimant did not file his petition within 30 days after the first letter was issued, the Court held that it lacked jurisdiction under section 7623(b)(4). Friedland II involved the same claimant but a different claim. In Friedland II, 102 T.C.M. (CCH) 247, the Office issued a letter on March 3, 2011, in which it “denied * * * [the whistleblower’s] claim.” The claimant made one or more phone calls disputing the denial of his claim and sent a letter asking the Office to reconsider its decision. The Office sent him two subsequent letters, dated March 23 and April 11, 2011, that reaffirmed the March 3 determination. There is no indication that the claimant submitted additional information of any kind after receiving the March 3 letter. He filed his Tax Court petition on April 13, 2011, 41 days after issuance of the March 3 letter. The Court held that the March 3 letter constituted “the determination” under section 7623(b)(4) and that it lacked jurisdiction because the claimant did not petition within 30 days of that determination. Id. at 248. In the instant case, the Office processed petitioners’ application “as four separate claims designated with numbers ending in 48, 49, 50, and 51.” See op. Ct. p. 275. The Office denied these claims in substantially identical letters dated October 30 and November 15, 2012. These letters informed petitioners that “the information you provided did not result in the collection of any proceeds” and stated that “you are not eligible for an award.” See id. pp. 275-276. Because the IRS is authorized to make a nondiscretionary award only if it collects proceeds “based on information brought to the Secretary’s attention by * * * [the claimant],” sec. 7623(b)(1), these letters unambiguously informed petitioners that their claim was denied. The letters clearly embodied “a final administrative decision regarding petitioner[s’] whistleblower claims,” Cooper v. Commissioner, 135 T.C. 70, 76 (2010), and thus constituted a “determination regarding an award” that would have enabled petitioners to seek review in this Court under section 7623(b)(4).[1] In January 2013 “petitioners sent a letter to the Whistle-blower Office in which they stated that they were submitting additional information and making additional claims for the years covered by the 2012 letters.” See op. Ct. p. 276. This information, according to petitioners, included 300 additional documents “supporting and expanding their claims.” See id. note 5. In response to this supplemental submission, the Office sent petitioners a letter dated February 12, 2013, which “referred only to claim number 48.” It stated that “your claim still does not meet our criteria for an award” and that “[o]ur determination remains the same despite the information contained in your latest letter.” See op. Ct. p. 276. The petition was filed on March 12, 2013, within 30 days of the mailing of the February 12, 2013, letter, but more than three months after the mailing of the October and November 2012 letters. Here, as in the Friedland cases, the Office sent petitioners an initial letter embodying a “determination” that would have provided this Court with jurisdiction, then sent a subsequent letter addressing their claims. In the Friedland cases, we held that the claimant was required to petition the Court in response to the first letter and that his attempted petition in response to the subsequent letter(s) was jurisdictionally out of time. Thus, unless the Friedland cases are distinguished or disapproved, or unless they are regarded as nonbinding because they were issued as Memorandum Opinions, their holdings dictate that we lack jurisdiction in the instant case because the petition was not filed within 30 days of the first letter. We believe that the Friedland cases are factually distinguishable. In Friedland II, the claimant did nothing after receiving the first letter except complain about it; he provided no new information but simply sought reconsideration of the Office’s prior adverse determination. In Friedland I, 101 T.C.M. at 1422, the claimant furnished additional information consisting, not of factual documentation, but of alleged legal authority that the Court found to be “gratuitous[].’’ Here, petitioners stated that they were providing 300 additional documents and also said they were “making additional claims for the years covered by the 2012 letters.” See op. Ct. p. 276 and note 5. Because petitioners in their followup letters stated that they were making additional claims supported by additional documentation, it seems perfectly reasonable to regard them as having made a new, additional, or supplemental claim for an award and to treat the February 2013 letter as a “determination” denying this new, additional, or supplemental claim. If there is any uncertainty about this, the Court has ample tools at its disposal, from stipulations to evidentiary hearings, to eliminate that uncertainty. Since the Court declines to deploy these tools, we resolve any doubt against respondent as the movant and in petitioners’ favor and we treat their followup letters as making a different or supplemental claim. Since the petition was filed within 30 days of the Office’s determination denying that different or supplemental claim, we can assume jurisdiction over this controversy consistently with our holdings in the Friedland cases.[2] The opinion of the Court declines to address these factual differences between the Friedland cases and the instant case, stating: “In holding that we have jurisdiction we have not considered the substance or significance of additional information petitioners submitted after they received the 2012 letters.” See op. Ct. note 5. We agree that in assessing its jurisdiction the Court should focus carefully on “the text of the 2013 letter.” Ibid. But the Court necessarily must also consider to what that letter was responding. Was the Office simply reiterating a determination that it had previously made, as in the Friedland cases? Or was it responding to something new and different? [3] The IRS determination that affords this Court jurisdiction is a determination regarding a “claim for an award.” See sec. 7623(b)(3). Petitioners stated in their January 2013 letter that they were “making additional claims for the years covered by the 2012 letters” and were submitting additional documentation to support those claims. See op. Ct. p. 276. If in fact petitioners were making additional claims to which the January 2013 letter was responding, that is a fact that cannot properly be ignored. Whether petitioners made different or additional claims is critical in assessing whether this case differs in a legally significant way from the Friedland cases.[4] The opinion of the Court declines to examine the substance of petitioners’ supplemental claims or to distinguish the Friedland cases on their facts. But where it actually leaves the Friedland holdings is not entirely clear. The Court says that it “will not follow the holdings in the Friedland cases to the extent they state or imply that it is not possible for the Whistleblower Office to issue, as to a given claim, more than one ‘determination’ on which our jurisdiction might be based.” See op. Ct. p. 283. But this apparent disapproval of the Friedland cases makes little sense, because neither opinion states or implies any such thing. The Court in Friedland II said that it was confronted with “a substantially identical situation” as in Friedland I, namely, a situation where the Office’s subsequent letters “‘merely reaffirmed the initial determination in the first letter.’” Friedland II, 102 T.C.M. (CCH) at 248 (quoting Friedland I, 101 T.C.M. (CCH) at 1423). The Friedland cases do not hold that it is impossible for the Office to make more than one determination on the same claim. Rather, they hold that this did not happen on the facts presented because the second letter was not a distinct “determination” but in effect a mere cross-reference to a prior “determination.” The key questions, we think, are whether “the claim” and “the determination” remain the same. The Friedland cases considered the claims not to have changed and treated the subsequent letters as simply reiterating the denial of those claims. But if the claim does change — e.g., if the claimant submits substantial additional documentation, expands his existing claim, or makes new claims — it is entirely possible for the Office to make a second determination (positive or negative) that will afford us jurisdiction. Indeed, that is exactly what we think happened here: the Office did make a second determination regarding petitioners’ universe of claims and, because those claims had changed, we have jurisdiction to review the second determination consistently with the Friedland cases.[5] If a rule of law is to be generalized from the Friedland cases, it is that, if a claimant fails timely to file a petition in response to a determination letter and receives a subsequent letter reiterating the same determination on the same claim, the subsequent letter does not start another 30-day period for petitioning the Tax Court. The opinion of the Court declines to address that critical question, namely, whether a second, substantially identical, denial letter can start another petition period. The Court rationalizes its refusal to address this problem on the ground that it presents “a hypothetical case.” See op. Ct. p. 286. But this is exactly the fact pattern that the Court believed it faced in both Friedland cases. We do not understand how the Court can conclude that the Friedland cases must be disapproved while declining to address as “hypothetical” the fact pattern that they display. In ruling that a claimant may file a petition in response to any of a series of similar letters involving a negative determination on the same claim, the Court focuses on the phrase “[a]ny determination regarding an award” in section 7623(b)(4). It infers from Congress’ use of the word “any” that a claimant may be able to file a petition “in response to more than one letter from the Commissioner.” See op. Ct. pp. 281-283. The Court analogizes this situation to one where the IRS sends multiple notices of deficiency for a particular year, enabling the taxpayer to file separate petitions in response to the various notices. See id. pp. 281-282. This analogy does not hold water. When the Commissioner sends multiple notices of deficiency for a given year, the second notice invariably involves different determinations— e.g., different items of income, different deductions, or different dollar amounts — from those in the first notice. That is not so in the Friedland paradigm. In those cases, the IRS made a determination in the first letter — that the claim for an award was rejected — and issued a second letter that refused to disturb that very same determination.[6] In any event, Congress’ use of the word “any” will not bear the weight that the opinion of the Court places upon it. A common meaning of “any” is simply “a” or “one.” See op. Ct. note 11. In the Friedland cases, the Office made “a determination” in the first letter. The Office then sent the claimant a second letter that said in effect: “We are not changing our determination.” That second letter did not constitute a distinct “determination”; it simply repeated the determination that had already been made. The Court’s holding that a claimant may file a petition, at his option, in response to any of a series of letters referring to the denial of his claim is difficult to reconcile with the 30-day jurisdictional filing period that Congress placed in section 7623(b)(4). The Office has not hesitated to send multiple letters to claimants in an effort to demonstrate its good faith in acknowledging their queries and submissions. A claimant who has received a determination letter denying his claim and who has neglected to file a Tax Court petition within 30 days may have little difficulty stimulating the issuance by that Office of one or more additional letters reaffirming the previous letter(s). If each subsequent letter falls within the statutory phrase “any determination,” claimants can end-run the 30-day jurisdictional filing period with comparative impunity. The Court provides no reason to believe that Congress intended so unlikely a result.[7] In sum, there is no dispute that the Office can make more than one “determination” with respect to a claimant’s claim or universe of claims. If the claim is different, then the determination will be different, and this Court can properly assume jurisdiction over the subsequent determination. That is what we think the Court should do here. But if the claim is not different and the determination is the same, and if the petition is filed more than 30 days after the original determination, the Court should hold that it lacks jurisdiction, as the Court in the Friedland cases correctly did.[8] Goeke, Holmes, Kerrigan, and Buch, JJ., agree with this concurring opinion. The opinion of the Court declines to express a view on the question whether “we would have had jurisdiction if petitioners had filed a petition in 2012.” See op. Ct. note 8. The Court could answer this question in the negative, however, only by disavowing our reasoning and result in Cooper, 135 T.C. at 76. And unless that question is answered in the affirmative, there would be an obvious basis for distinguishing the Friedland cases and no apparent reason for this case to be reviewed by the Court Conference. Contrary to the Court’s assertion, we are not “accept[ing] as a basis for our jurisdiction petitioners’ unverified assertion that the additional materials are new or noteworthy.” See op. Ct. p. 285. The Court seems to forget that it is ruling on a motion to dismiss. If there are factual uncertainties that must be resolved before ruling on a motion to dismiss, the proper procedure is to resolve them or to assume facts as not favoring the movant (respondent). Courts must consider the substance of a claimant’s communications with the IRS when addressing the scope of its jurisdiction in other contexts. For example, when evaluating a jurisdictional challenge in a tax refund suit under the “variance doctrine,” a court must determine whether the claims asserted in the taxpayer’s refund suit vary from the claims asserted in the administrative refund claim. See, e.g., El Paso CGP Co., L.L.C. v. United States, 748 F.3d 225, 228-229 (5th Cir. 2014); IA 80 Grp., Inc. v. United States, 347 F.3d 1067, 1073-1074 (8th Cir. 2003); Charter Co. v. United States, 971 F.2d 1576, 1579 (11th Cir. 1992); Ottawa Silica Co. v. United States, 699 F.2d 1124, 1138 (Fed. Cir. 1983). The opinion of the Court suggests that it will be a daunting mission to ascertain, when ruling on a motion to dismiss, whether the Office is simply reiterating a prior determination or rejecting a new or supplemental claim. See op. Ct. p. 285. We disagree with that assessment. In Friedland II, it was obvious that the claimant, who submitted no new information, was simply quarreling with the prior determination. And in Friedland I, 101 T.C.M. at 1422, the Court had no difficulty discerning that the claimant’s supplemental information was “gratuitousü.” The track record so far does not suggest that this exercise will be burdensome. In any event, the Court is obligated to resolve factual disputes that bear upon the propriety of granting a motion to dismiss. Again, if there is any uncertainty about the substantiality of petitioners’ supplemental claims or the Office’s denial of them, the proper procedure is to resolve that factual dispute by an evidentiary hearing or otherwise. The Court’s analogy is also strained because there is a statutory regime in place to deal with the problem of multiple notices of deficiency. Section 6212(c)(1) prohibits the sending of a second notice of deficiency once the taxpayer has timely petitioned the Court in response to an initial notice of deficiency for the same year, except in cases of fraud, jeopardy and termination assessments, and correction of mathematical errors. In light of the Court’s holding, the Office might change its letter-writing habits. Once it has sent the claimant a “determination” that denies his claim — that is, a letter that “constitutes a final administrative decision regarding [his] claim,” Cooper, 135 T.C. at 76—any response to a request for reconsideration might simply say: “We issued our determination denying your claim on [date.]” One would hope that the Court would not regard this as a distinct “determination” that begins another 30-day jurisdictional filing period. Otherwise, the Office might be better off just ignoring all subsequent communications from claimants about their rejected claims. On the basis of the text of the February 2013 letter and petitioners’ timely petition thereto, the opinion of the Court holds that the February 2013 letter constitutes a “determination” that we may review. During that review, surely respondent will ask us to undertake what the Court suggests is a “knotty factual [inquiry],” see op. Ct. p. 285, as to whether, by the February 2013 letter, the Office simply reiterated a prior determination (respondent’s view) or rejected a new or supplemental claim (petitioners’ view). Let us assume that the Court finds the former (i.e., that the Office merely reiterated a prior determination). What would the Court then do? Would we put that finding aside and consider the merits of respondent’s twice-made determination? If so, we would be sanctioning a clear end run around the 30-day jurisdictional filing provision that Congress has placed in the statute. If we would not put the finding aside, but instead dismiss the case for what at bottom would be petitioners’ failure to have petitioned timely in response to the first determination, would we not (however we labeled it) be dismissing for lack of jurisdiction, as we did in the Friedland cases? In any event, the knotty factual inquiry likely cannot be avoided, and we see no reason to postpone making it.