143 T.C. No. 14

UNITED STATES TAX COURT

THOMAS M. COMPARINI AND VICKI COMPARINI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6674-13W.                        Filed October 2, 2014.

Ps filed with R's Whistleblower Office (W) a claim for a whistleblower award under I.R.C. sec. 7623(b). In 2012 W mailed four essentially identical letters to Ps stating that Ps are not eligible for an award and inviting Ps to contact W with any questions.

Ps later submitted additional information to W in support of Ps' claim. In 2013 W sent a letter (2013 letter) to Ps stating that W "determined your claim still does not meet our criteria for an award", "[o]ur determination remains the same", and "we are closing this claim." Ps petitioned this Court under I.R.C. sec. 7623(b)(4) within 30 days after receiving the 2013 letter.

R moved to dismiss this case for lack of jurisdiction.

<u>Held</u>: The 2013 letter constitutes a determination for purposes of I.R.C. sec. 7623(b)(4). R's motion to dismiss for lack of jurisdiction will be denied.

Thomas M. and Vicki Comparini, pro sese.

Rachel G. Borden, for respondent.


OPINION


COLVIN, Judge:  This case is before the Court on respondent's motion to dismiss for lack of jurisdiction.  For reasons discussed below we will deny respondent's motion.

Petitioners commenced this whistleblower proceeding pursuant to section 7623(b)(4).[1]  Respondent then moved to dismiss for lack of jurisdiction, and petitioners filed an objection to respondent's motion.  Neither party requested a hearing, and we conclude that none is necessary to decide respondent's motion.

For purposes of deciding respondent's motion, we consider the following undisputed information contained in the pleadings and documents relating to respondent's motion to dismiss.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  We round monetary amounts to the nearest dollar.

Background

Petitioners resided in Illinois when they filed the petition.

On February 6, 2012, petitioners filed with the Internal Revenue Service (IRS) a Form 211, Application for Award for Original Information. The form was forwarded to the IRS Whistleblower Office in Ogden, Utah.

The Whistleblower Office processed petitioners' application as four separate claims designated with numbers ending in 48, 49, 50, and 51. The Whistleblower Officer treated two of the claims (48 and 49) as if they had been made only by petitioner husband and the two other claims (50 and 51) as if they had been made only by petitioner wife. The record does not indicate why the Whistleblower Office treated petitioners' application as four separate claims.[2] The Whistleblower Office denied petitioners' claims in four separate letters. The two letters sent to petitioner husband dated October 30, 2012, stated:

> We have considered your application for an award dated 01/11/12. Under Internal Revenue Code Section 7623, an award may be paid only if the information provided results in the collection of additional tax, penalties, interest or other proceeds. In this case, the information you provided did not result in the collection of any proceeds. Therefore, you are not eligible for an award.

---

[2]Neither party contends, nor do we believe, that the fact that the Whistleblower Office used four letters in 2012 instead of one to deny petitioners' application has any bearing on the issues in dispute in this case.

Although the information you submitted did not qualify for an award, thank you for your interest in the administration of the internal revenue laws.

If you have any further questions in regards to this letter, please feel free to contact the Informant Claims Examination Team at * * *.

> Sincerely,
>      /s
> Cindy Wilde
> Supervisor--Whistleblower Office, Ogden

The Whistleblower Office denied petitioner wife's claims in two substantially identical letters dated November 15, 2012.  Petitioners received the four letters (2012 letters) in November 2012.  None of these letters refers to a determination or states that a determination had been made.

Around January 18, 2013, petitioners sent a letter to the Whistleblower Office in which they stated that they were submitting additional information and making additional claims for the years covered by the 2012 letters.  The Whistleblower Office replied by letter dated February 12, 2013 (February 2013 letter).  The February 2013 letter referred only to claim No. 48 and stated:

> We considered the additional information you provided and determined your claim still does not meet our criteria for an award. Our determination remains the same despite the information contained in your latest letter.

Please keep in mind the confidentiality of the informants' claims process and understand that we cannot disclose the facts surrounding an examination, i.e. taxes collected and audit examination.

Although we are closing this claim, we appreciate your interest in the compliance with the tax laws and in the Informants' Claims for Award Program.

Sincerely,
/s
Cindy Wilde
Supervisor--Whistleblower Office, Ogden

Petitioners filed a petition with this Court on March 19, 2013, under section 7623(b)(4). Petitioners mailed the petition to the Court in an envelope postmarked March 14, 2013.

Discussion

The issue for decision is whether we have jurisdiction as a result of petitioners' filing a petition within 30 days after respondent mailed the 2013 letter.

I.    Introduction

The Tax Court may exercise jurisdiction only to the extent expressly provided by Congress. See sec. 7442; Breman v. Commissioner, 66 T.C. 61, 66 (1976); see, e.g., Rules 13, 340(b). Section 7623(b)(4) provides that this Court has jurisdiction with respect to matters addressed in any determination made in response to a whistleblower claim under section 7623(b). More specifically,

section 7623(b)(4) provides that "[a]ny determination regarding an award under paragraph (1), (2), or (3)[3] may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." Thus, this Court has jurisdiction under section 7623(b)(4) when (1) the IRS makes any determination regarding an award under section 7623(b)(1), (2), or (3); and (2) a petition invoking our jurisdiction over that matter is timely filed. See Kasper v. Commissioner, 137 T.C. 37, 41 (2011).

To decide whether we have jurisdiction, first we consider whether the 2013 letter constitutes a determination under section 7623(b)(4). Second, if it constitutes a determination, we decide what effect, if any, the 2012 letters had on petitioners' opportunity to invoke our jurisdiction under section 7623(b)(4) upon receipt of the 2013 letter.

---

[3]Para. (1) generally requires that the IRS award an individual anywhere from 15% to 30% of the proceeds the IRS collects as a result of pursuing an administrative or judicial action based on information furnished by an individual. Para. (2) generally provides that if proceeding with the action was primarily based on certain information other than that furnished by the individual, the award should be no more than 10% of the collected proceeds. Para. (3) provides that the IRS may reduce or deny an award otherwise payable under para. (1) or (2) if the individual planned or initiated the conduct he or she reported.

II.     Whether the 2013 Letter Is a Determination Under Section 7623(b)(4)

We first decide whether the 2013 letter is a determination for purposes of section 7623(b)(4).  Petitioners filed the petition within 30 days after the Whistleblower Office sent the 2013 letter.[4]  That letter stated in pertinent part that "[w]e considered the additional information you provided and determined your claim still does not meet our criteria for an award", "our determination remains the same", and "we are closing this claim."[5]

The 2013 letter was the only letter the Whistleblower Office sent to petitioners stating that a determination had been made on their claim.  By referring to the determination and stating that the claim was being closed, the letter made clear that the administrative process had concluded.  See Cooper v. Commissioner, 135 T.C. 70, 72-76 (2010) (holding that a letter rejecting whistleblower claims was a determination for purposes of section 7623(b)(4) where the letter included

---

[4]Respondent does not challenge the timeliness of the petition as to the 2013 letter.

[5]Our holding is based on the text of the 2013 letter.  Petitioners contend that they provided 300 additional documents supporting and expanding their claims.  In holding that we have jurisdiction we have not considered the substance or significance of additional information petitioners submitted after they received the 2012 letters.  We discuss infra pp. 17-18 an alternative ground for jurisdiction favored by Judge Halpern and Judge Lauber in their joint concurring opinion and based on petitioners' disputed claims about the significance of these additional documents.

the clause "'an award determination * * * [could not] be made'"); see also SECC Corp. v. Commissioner, 142 T.C. ___, ___ (slip op. at 7) (Apr. 3, 2014) (holding that a letter not identified as a determination but stating that "[t]he employment tax liability as determined by Appeals will be assessed and you will receive a Notice and Demand for payment of the tax, penalty, and interest owed" was a determination for purposes of section 7436(a)).

A letter rejecting a whistleblower claim can be a determination under section 7623(b)(4) even if it is not formatted as a determination. See Whistleblower 11332-13W v. Commissioner, 142 T.C. ___, ___ (slip op. at 5, 15) (June 4, 2014); Cooper v. Commissioner, 135 T.C. 70. We have reached a similar holding in other contexts. See SECC Corp. v. Commissioner, 142 T.C. ___ (slip op. at __); Corbalis v. Commissioner, 142 T.C. ___, ___ (slip op. at 21-22) (Jan. 27, 2014) (holding that letters stating they were not final determinations with respect to interest abatement were final determinations for purposes of section 6404(h)); Craig v. Commissioner, 119 T.C. 252, 259 (2002) (holding that a form decision letter issued after a CDP hearing erroneously labeled as an "equivalent hearing" was a determination conferring jurisdiction under section 6330(d)(1)); Lunsford v. Commissioner, 117 T.C. 159, 164 (2001) (holding that a written

notice to proceed with a collection action constituted a determination under section 6330).

The 2013 letter contained a statement on the merits of petitioners' whistleblower claim, referred for the first time in a letter to claimants to a "determination" made on that claim, and did not indicate that further administrative procedures were available to petitioners.[6] We conclude that it constitutes a determination for purposes of section 7623(b)(4).[7]

III.   The Effect, If Any, of the 2012 Letters on Our Jurisdiction Over the 2013 Letter

We next consider respondent's contention that we lack jurisdiction over the petition filed in response to the 2013 letter because it was filed untimely as to the 2012 letters.

------

[6]In contrast, for example, 30-day letters sent by the Examination Division typically state a proposed result and invite the taxpayer to seek review by the IRS Office of Appeals.

[7]It is well established that no particular words are required for our jurisdiction under sec. 7623(b)4). Cooper v. Commissioner, 135 T.C. 70, 75 (2010). In describing the text of the 2013 letter in the accompanying text, we do not mean to imply that any of the particular words in the 2013 letter must be present in letters sent by the Whistleblower Office in other cases in order for this Court to have jurisdiction.

A.    Respondent's Argument

Respondent's contention that the petition was untimely is based on opinions

of this Court in Friedland v. Commissioner, T.C. Memo. 2011-90 (Friedland I),

and Friedland v. Commissioner, T.C. Memo. 2011-217 (Friedland II) (collectively,

Friedland cases). In the Friedland cases, the Whistleblower Office sent to the

claimant a letter in response to which the claimant did not file a petition, and the

Whistleblower Office later sent another letter in response to which the claimant

filed a petition. We held that we lacked jurisdiction in both of those cases. We

discuss infra part III.B. the texts of the 2012 letters in this case and the letters sent

in the Friedland cases. We conclude infra part III.C. that, unlike the letters in the

Friedland cases, the 2012 letters do not affect petitioners' opportunity to invoke

our jurisdiction over the 2013 letter.

B.    Respondent's Letters Sent to Whistleblower Claimants in This Case,
      the Cooper case, and the Friedland Cases Cause Confusion About the
      Claimants' Opportunity To Seek Review in This Court.

In considering the effect, if any, the 2012 letters had on our jurisdiction over

the petition filed in response to the 2013 letter, we will review the text of letters

sent by the Whistleblower Office to claimants in the instant case, the Friedland

cases, and, to provide perspective, the letter sent in Cooper.

The 2012 letters stated that petitioners are not eligible for an award and invited them to contact the Whistleblower Office. As stated supra pp. 3-4, the 2012 letters stated that "you are not eligible for an award" and that "[i]f you have any further questions in regards to this letter, please feel free to contact the Informant Claims Examination Team" at a phone number stated in the letter.[8]

The letter rejecting the whistleblower claim in Cooper v. Commissioner, 135 T.C. at 72, stated that "'an award determination * * * [could not] be made under section 7623(b)' because petitioner 'did not identify * * * federal tax issue[s] upon which the IRS will take action.'" (Fn. ref. omitted.) The letter also indicated that an award was not warranted for either claim because the taxpayer's information did not "result in the detection of the underpayment of taxes." Id. We held that the letter contained a determination for purposes of section 7623(b)(4) and that we have jurisdiction over the petition timely filed on the basis of that letter. Id. at 75-76.

In Friedland I the whistleblower received four letters from the Whistleblower Office relating to his claim. The first letter, dated November 13, 2009, denied the claim and made no reference to further administrative procedures

_____

[8]We do not have before us a petition filed in response to the 2012 letters, and so we have no occasion to express our views as to whether we would have had jurisdiction if petitioners had filed a petition in 2012.

available to the whistleblower. In addition, the Whistleblower Office sent a letter to the claimant in Friedland I stating that "he would have to appeal the determination through the court system, not the Whistleblower Office." Friedland I, slip op. at 6. The claimant in Friedland I was also the claimant in Friedland II.

In Friedland II the claimant received three letters from the Whistleblower Office relating to his claim. The first of those letters, dated March 3, 2011, denied the claim and made no reference to administrative procedures available to the whistleblower.

Whatever the significance of the differences among these letters, we do not expect whistleblower award claimants to parse letters they receive from the Whistleblower Office to identify slight variations in those letters for clues as to whether the 30-day period to file a petition has commenced. As discussed below, section 7623(b)(4) does not impose this burden.

C.   Respondent's Argument Gives Insufficient Regard to the Text of Section 7623(b)(4).

As noted supra p. 5, section 7623(b)(4) provides that this Court has jurisdiction with respect to matters addressed in "any" determination issued in response to a whistleblower claim under section 7623(b). The Tax Court did not

expressly consider the significance of the grant of jurisdiction in section 7623(b)(4) over "any" timely petitioned determination in Cooper,[9] in the Friedland cases, or in any other prior opinion. We do so here.

The word "any" does not modify "determination" in any other statute describing our jurisdiction. In comparison, section 6015(e) provides our jurisdiction to determine whether a taxpayer who filed jointly is entitled to relief from joint liability after the Commissioner sends to the taxpayer a "final" determination.

By providing the Tax Court with jurisdiction over "any" timely petitioned determination, section 7623(b)(4) in some respects parallels section 6212. Section 6212 authorizes the Commissioner to send more than one notice of deficiency for a taxable period unless the taxpayer has timely filed a Tax Court petition in response to a prior notice of deficiency for that taxable period.[10] This aspect of

---

[9]In Cooper we found that the determination over which we exercised jurisdiction was "final". We did not have before us a determination which was not "final", and so in Cooper we made no holding regarding whether we would have jurisdiction over a determination which is not final.

[10]Sec. 6212 provides in pertinent part as follows:

SEC. 6212. NOTICE OF DEFICIENCY.

    (a) In General.--If the Secretary determines that there is a

(continued...)

section 6212 shows that in another area of our jurisdiction--deficiency cases--a petitioner may file a petition in response to more than one letter from the Commissioner.

Petitioners received letters from the Whistleblower Office in 2012 in response to which they did not file a petition and a letter in 2013 in response to which they did file a petition. Because section 7623(b)(4) provides this Court with jurisdiction over "any" determination, we hold that we have jurisdiction over the petition filed in response to the 2013 letter.[11] If it were otherwise, the

---

[10](...continued)
deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. * * *

* * * * * * *

(c) Further Deficiency Letters Restricted.--(1) General rule.--If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213 (a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year, * * *

See also Gmelin v. Commissioner, T.C. Memo. 1988-338, aff'd without published opinion, 891 F.2d 280 (3d Cir. 1989).

[11]Dictionary definitions are entirely consistent with everyday understanding of "any". The American Heritage Dictionary 81 (5th ed. 2011) defines "any" as follows: "adj. 1. One, some, every, or all without specification * * * 2. Exceeding

(continued...)

Commissioner could largely frustrate judicial review by issuing ambiguous denials that did not seem to be, but were, determinations.  Section 7623(b)(4) provides an opportunity for petitioners to file a petition in response to the 2013 letter even though they did not file a petition in response to the 2012 letters.

The Court has gained a broader perspective on issues arising in the developing whistleblower area in the time since we decided the Friedland cases. In particular, we have considered here distinctive language in section 7623(b)(4)-- i.e., "[a]ny determination" (emphasis added)--that was not discussed by the Court in the Friedland cases.  Taking into account this broader perspective and the language of the statute, the Court will not follow the holdings in the Friedland cases to the extent they state or imply that it is not possible for the Whistleblower

---

[11](...continued)
normal limits, as in size or duration * * *."  Similarly, in defining "any", Webster's Third New International Dictionary 97 (2002) states:  "adj. 1. : one indifferently out of more than two: one or some indiscriminately of whatever kind: a: one or another * * * b: one, no matter what one * * * c: one or some of whatever kind or sort * * * 2. one, some or all indiscriminately of whatever quantity * * * 3. a: great, unmeasured, or unlimited in amount, quantity, number, time, or extent".  Of course, when construing the word "any" (as when construing any statutory term), we avoid literalistic interpretations that would contradict congressional intent or produce absurd results.  Cf. Util. Air Regulatory Grp. v. EPA, 573 U.S. ___, ___, 134 S. Ct. 2427, 2439-2445 (2014).

Office to issue, as to a given claim, more than one "determination" on which our jurisdiction might be based.

IV.     The Joint Concurring Opinion

The joint concurring opinion by Judge Halpern and Judge Lauber agrees with the Court that we have jurisdiction here but prefers an alternative basis for our jurisdiction.  We base our jurisdiction on the text of the 2013 letter, while the joint concurring opinion would base our jurisdiction on petitioners' representations about materials they sent to the Whistleblower Office after receiving the 2012 letters.

The "main concern with the opinion of the Court" expressed in the joint concurring opinion is "the way it handles the Friedland cases", which the joint concurring opinion would distinguish on their facts.  See joint concurring op. pp. 24, 28.  Contrary to the suggestion of the joint concurring opinion and as demonstrated by the difference of opinion evidenced between this report and the joint concurring opinion, reasonable minds may differ as to the breadth and contours of the holdings in the Friedland cases.  Indeed, the joint concurring opinion finds it necessary to resort to the record in Friedland I to draw conclusions about its holding that are not apparent or inevitable from the text of the opinion itself.  See joint concurring op. p. 25.  We believe that the need to delve into the

record of <u>Friedland I</u> to posit a theory of the scope of its holding illustrates as well as anything can that both <u>Friedland</u> cases are susceptible to the types of interpretations which we expressly disapprove today without the need to decide hypothetical issues not before us in this case.

In addition, while it is possible, as the joint concurring opinion does, to parse the <u>Friedland</u> cases and find factual nuances that might be thought to distinguish them in one way or another from this case, ultimately the factual distinctions are so tenuous that seeking to define our jurisdiction by reference to them risks contributing to confusion for claimants as to the proper time for filing a petition, as described <u>infra</u> pp. 23-24 of the joint concurring opinion, while also increasing the burdens on the Court.

The joint concurring opinion states that in <u>Friedland II</u> the claimant provided no new information to the Whistleblower Office after receiving the first letter and in <u>Friedland I</u> the claimant furnished additional information consisting not of factual documentation but of alleged legal authority that the Court found to be gratuitous, joint concurring op. pp. 28-29; but here, in contrast, petitioners "apparently" provided 300 additional documents supporting and expanding their claims. <u>See</u> <u>id.</u> p. 29. Thus, the essential difference between the analysis of the opinion of the Court and that of the joint concurring opinion is that the opinion of

the Court bases our Court's jurisdiction on the text of the 2013 letter, and the joint concurring opinion would find jurisdiction because petitioners represent that they made new claims and submitted additional materials to the Whistleblower Office after receiving the 2012 letters.

However, the dispute between petitioners and the Whistleblower Office about the significance of those additional materials could not be more stark. Petitioners state that on January 18, 2013, they provided 300 documents supporting and expanding their claims (in addition to 500 documents they say they provided in their original submission to the Whistleblower Office).[12]  In contrast, on the basis of the flat rejection of petitioners' claim made by the 2013 letter, it appears that the Whistleblower Office completely disagreed with petitioners' expansive representations about additional materials.

The joint concurring opinion thus accepts as a basis for our jurisdiction petitioners' unverified assertion that the additional materials are new or noteworthy.  We believe this could invite abuse by unconscientious claimants in future cases.[13]  Equally problematic, it would be burdensome and awkward for the

_____

[12]Because the claimed 800 documents are not in the record, we cannot confirm petitioners' description of the submissions.

[13]This discussion relates to possible future cases and not to the conduct of

(continued...)

Court to verify claimants' assertions about the newness or significance of additional materials by comparing them to the materials originally submitted to the Whistleblower Office--all to decide not the merits of the case but merely the threshold question of jurisdiction.

The joint concurring opinion envisions the following process for delving into potentially massive amounts of materials merely to resolve jurisdiction: "If there is any uncertainty about * * * [whether petitioners made additional claims supported by additional documentation], the Court has ample tools at its disposal, from stipulations to evidentiary hearings, to eliminate that uncertainty." See joint concurring op. p. 29. The joint concurring opinion would "resolve any doubt against respondent as the movant and in petitioners' favor and we treat their followup letters as making a different or supplemental claim." See id. This approach is further explained as follows: "If there are factual uncertainties that must be resolved before ruling on a motion to dismiss, the proper procedure is to resolve them or to assume facts as not favoring the movant (respondent)." See id. note 2.

---

[13](...continued) petitioners.

Thus, using the approach urged by the joint concurring opinion, claimants' assertions about the newness or significance of their claims would be assumed correct unless the Court undertakes a hearing (using for purposes of discussion petitioners' assertions about the record here) to see whether the 300 additional documents raise new or noteworthy claims compared to the 500 documents previously submitted. We find it unnecessary to address those knotty factual matters in deciding our jurisdiction and instead base our jurisdiction on the text of the 2013 letter.

The joint concurring opinion misstates the Court's holding as follows: "The Court hold[s] that a claimant may file a petition, at his option, in response to any of a series of [identical] letters referring to the denial of his claim". See id. p. 35. On the contrary, the Court provides no views on a hypothetical case involving "any of a series of [identical] letters" and simply decides that the 2013 letter constitutes a determination and that its status as a determination is not negated, as respondent contends in reliance on the Friedland cases, by the fact that the Whistleblower Office sent the 2012 letters.

The joint concurring opinion criticizes the statute because it fails "to specify an unambiguous 'ticket to the Tax Court'". Joint concurring op. p. 23. The joint concurring opinion also disagrees with the reliance by the opinion of the Court on

the statute's grant of our jurisdiction over "any" determination. See id. p. 34. The joint concurring opinion would provide jurisdiction here only if the 2013 letter acted on a new, different, or supplemental claim. See id. p. 29. In contrast, we simply apply the plain language of the statute in the most straightforward fashion, giving effect as best we can to every word that Congress enacted, including the word "any".

V.      Conclusion

In deciding whether we have jurisdiction, we are mindful that "[w]here a statute is capable of various interpretations, we are inclined to adopt a construction which will permit the Court to retain jurisdiction without doing violence to the statutory language. See Lewy v. Commissioner, 68 T.C. at 781, 783-786 [1977]". Smith v. Commissioner, 140 T.C. 48, 51 (2013). Congress intended to provide a whistleblower claimant with the opportunity to invoke our jurisdiction after the Commissioner acts on the claim. To date many of those letters we have seen do not give claimants clear notice that the statutory 30-day period to file a petition has begun to run. We believe that adoption of the Commissioner's contentions in this case would create an unnecessary trap for individuals seeking to invoke our jurisdiction under section 7623(b). We conclude that the 2013 letter constitutes a determination for purposes of section 7623(b)(4).

To reflect the foregoing,[14]

<u>An appropriate order denying</u>

<u>respondent's motion to dismiss will</u>

<u>be issued</u>.

Reviewed by the Court.

THORNTON, FOLEY, VASQUEZ, GALE, GUSTAFSON, PARIS, MORRISON and NEGA, <u>JJ</u>., agree with this opinion of the Court.

---

[14]While the February 2013 letter referred only to what the Whistleblower Office treated as one of four claims, the record does not show in what respect it may have been a denial of part, instead of all, of petitioners' claim, and so we treat it as a denial of petitioners' entire claim.

HALPERN and LAUBER, JJ., concurring: We agree that the February 2013 letter from the Internal Revenue Service (IRS) Whistleblower Office (Office) embodies a "determination regarding an award" within the meaning of section 7623(b)(4) and that, because petitioners filed a petition within 30 days of that letter, the Court has jurisdiction over this controversy. We therefore concur in the result reached by the opinion of the Court. We write separately because we have concerns about certain portions of the analysis in the opinion and about how it treats our precedents in Friedland v. Commissioner, T.C. Memo. 2011-90, 101 T.C.M. (CCH) 1422 (Friedland I), and Friedland v. Commissioner, T.C. Memo. 2011-217, 102 T.C.M. (CCH) 247 (Friedland II) (collectively, Friedland cases).

Section 7623(b)(4) provides that "[a]ny determination regarding an award * * * may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." Unlike most statutory provisions granting us jurisdiction, section 7623(b)(4) does not pre-scribe any particular form of notice to the taxpayer or would-be petitioner. Indeed, the statute does not literally require written notice of any kind; it simply requires the making of a "determination."

The statute's failure to specify an unambiguous "ticket to the Tax Court" has created serious interpretative and practical problems, both for whistleblowers

and for the Court.  These problems have been compounded by the Office's habit--commendable in many respects--of communicating frequently with claimants during the claims investigation process.  These communications have employed verbiage that is sometimes inconsistent about the status of the claim under review.  In some cases, this has caused claimants to file premature petitions in our Court, fearing that the 30-day jurisdictional deadline would be triggered by an ambiguous communication that might later be deemed a "determination."  In other situations, such as in the <u>Friedland</u> cases and the instant case, claimants have engaged in further discussions with the IRS after receiving the initial letter.  They may then find themselves confronted with the assertion that they should have petitioned the Court immediately in response to the first letter and that their claims are now time barred.

Our main concern with the opinion of the Court is the way it handles the <u>Friedland</u> cases, whose facts resemble those here.  If the Court is going to hold that it has jurisdiction on the basis of the February 2013 letter notwithstanding the prior mailing of the 2012 letters, it must either distinguish the <u>Friedland</u> cases or disapprove them.  The Court declines to do the former.  And while not explicitly overruling those precedents, it does do the latter, stating:  "[T]he Court will not follow the holdings in the <u>Friedland</u> cases to the extent they state or imply that it

is not possible for the Whistleblower Office to issue, as to a given claim, more than one 'determination' on which our jurisdiction might be based." See op. Ct. pp. 15-16.

We disagree with this action for two reasons. First, the Friedland cases are distinguishable on their facts and, accordingly, in order to find jurisdiction here, there is no need to overrule or disapprove them. Second, it is error to disapprove these cases because the Court has not shown that they were wrongly decided.

In Friedland I, 101 T.C.M. (CCH) at 1422, the Office issued the claimant a letter stating that the claim had been evaluated and rejected. The claimant made further inquiries, by letter and telephone, and he supplied "additional information" regarding his claim. The record in Friedland I indicates that this additional information consisted, not of new factual material, but of a letter attaching legal authorities. The Court described this information as "gratuitous[]." Ibid.

The Office in Friedland I issued subsequent letters to the claimant "confirming that * * * [his] additional information had been received and considered but stating that the 'determination remains the same despite the information contained'" in the followup letters. 101 T.C.M. at 1422-1423. The Court held that the first letter constituted a "determination" denying the whistleblower's claim and that "[t]he subsequent three letters merely reaffirmed the initial determination

in the first letter." Id. at 1423. Because the claimant did not file his petition within 30 days after the first letter was issued, the Court held that it lacked jurisdiction under section 7623(b)(4).

Friedland II involved the same claimant but a different claim. In Friedland II, 102 T.C.M. (CCH) 247, the Office issued a letter on March 3, 2011, in which it "denied * * * [the whistleblower's] claim." The claimant made one or more phone calls disputing the denial of his claim and sent a letter asking the Office to reconsider its decision. The Office sent him two subsequent letters, dated March 23 and April 11, 2011, that reaffirmed the March 3 determination. There is no indication that the claimant submitted additional information of any kind after receiving the March 3 letter. He filed his Tax Court petition on April 13, 2011, 41 days after issuance of the March 3 letter. The Court held that the March 3 letter constituted "the determination" under section 7623(b)(4) and that it lacked jurisdiction because the claimant did not petition within 30 days of that determination. Id. at 248.

In the instant case, the Office processed petitioners' application "as four separate claims designated with numbers ending in 48, 49, 50, and 51." See op. Ct. p. 3. The Office denied these claims in substantially identical letters dated October 30 and November 15, 2012. These letters informed petitioners that "the

information you provided did not result in the collection of any proceeds" and stated that "you are not eligible for an award." See id. pp. 3-4. Because the IRS is authorized to make a nondiscretionary award only if it collects proceeds "based on information brought to the Secretary's attention by [the claimant]," sec. 7623(b)(1), these letters unambiguously informed petitioners that their claim was denied. The letters clearly embodied "a final administrative decision regarding petitioner[s'] whistleblower claims," Cooper v. Commissioner, 135 T.C. 70, 76 (2010), and thus constituted a "determination regarding an award" that would have enabled petitioners to seek review in this Court under section 7623(b)(4).[1]

In January 2013 "petitioners sent a letter to the Whistleblower Office in which they stated that they were submitting additional information and making additional claims for the years covered by the 2012 letters." See op. Ct. p. 4. This information, according to petitioners, included 300 additional documents "supporting and expanding their claims." See id. note 5.

---

[1]The opinion of the Court declines to express a view on the question whether "we would have had jurisdiction if petitioners had filed a petition in 2012." See op. Ct. note 8. The Court could answer this question in the negative, however, only by disavowing our reasoning and result in Cooper, 135 T.C. at 76. And unless that question is answered in the affirmative, there would be an obvious basis for distinguishing the Friedland cases and no apparent reason for this case to be reviewed by the Court Conference.

In response to this supplemental submission, the Office sent petitioners a letter dated February 12, 2013, which "referred only to claim number 48." It stated that "your claim still does not meet our criteria for an award" and that "[o]ur determination remains the same despite the information contained in your latest letter." See op. Ct. p. 4. The petition was filed on March 12, 2013, within 30 days of the mailing of the February 12, 2013, letter, but more than three months after the mailing of the October and November 2012 letters.

Here, as in the Friedland cases, the Office sent petitioners an initial letter embodying a "determination" that would have provided this Court with jurisdiction, then sent a subsequent letter addressing their claims. In the Friedland cases, we held that the claimant was required to petition the Court in response to the first letter and that his attempted petition in response to the subsequent letter(s) was jurisdictionally out of time. Thus, unless the Friedland cases are distinguished or disapproved, or unless they are regarded as nonbinding because they were issued as Memorandum Opinions, their holdings dictate that we lack jurisdiction in the instant case because the petition was not filed within 30 days of the first letter.

We believe that the Friedland cases are factually distinguishable. In Friedland II, the claimant did nothing after receiving the first letter except complain

about it; he provided no new information but simply sought reconsideration of the Office's prior adverse determination. In Friedland I, 101 T.C.M. at 1422, the claimant furnished additional information consisting, not of factual documentation, but of alleged legal authority that the Court found to be "gratuitous[]." Here, petitioners stated that they were providing 300 additional documents and also said they were "making additional claims for the years covered by the 2012 letters." See op. Ct. p. 4 and note 5.

Because petitioners in their followup letters stated that they were making additional claims supported by additional documentation, it seems perfectly reasonable to regard them as having made a new, additional, or supplemental claim for an award and to treat the February 2013 letter as a "determination" denying this new, additional, or supplemental claim. If there is any uncertainty about this, the Court has ample tools at its disposal, from stipulations to evidentiary hearings, to eliminate that uncertainty. Since the Court declines to deploy these tools, we resolve any doubt against respondent as the movant and in petitioners' favor and we treat their followup letters as making a different or supplemental claim. Since the petition was filed within 30 days of the Office's determination denying

that different or supplemental claim, we can assume jurisdiction over this contro-

versy consistently with our holdings in the <u>Friedland</u> cases.[2]

The opinion of the Court declines to address these factual differences

between the <u>Friedland</u> cases and the instant case, stating: "In holding that we

have jurisdiction we have not considered the substance or significance of

additional information petitioners submitted after they received the 2012 letters."

<u>See</u> op. Ct. note 5. We agree that in assessing its jurisdiction the Court should

focus carefully on "the text of the 2013 letter." <u>Ibid.</u> But the Court necessarily

must also consider <u>to what</u> that letter was responding. Was the Office simply

reiterating a determination that it had previously made, as in the <u>Friedland</u> cases?

Or was it responding to something new and different?[3]

---

[2]Contrary to the Court's assertion, we are not "accept[ing] as a basis for our jurisdiction petitioners' unverified assertion that the additional materials are new or noteworthy." <u>See</u> op. Ct. p. 18. The Court seems to forget that it is ruling on a motion to dismiss. If there are factual uncertainties that must be resolved before ruling on a motion to dismiss, the proper procedure is to resolve them or to assume facts as not favoring the movant (respondent).

[3]Courts must consider the substance of a claimant's communications with the IRS when addressing the scope of its jurisdiction in other contexts. For example, when evaluating a jurisdictional challenge in a tax refund suit under the "variance doctrine," a court must determine whether the claims asserted in the taxpayer's refund suit vary from the claims asserted in the administrative refund claim. <u>See, e.g.</u>, <u>El Paso CGP Co., L.L.C. v. United States</u>, 748 F.3d 225, 228-229 (5th Cir. 2014); <u>IA 80 Grp., Inc. v. United States</u>, 347 F.3d 1067, 1073-1074 (8th

(continued...)

The IRS determination that affords this Court jurisdiction is a determination regarding a "claim for an award." See sec. 7623(b)(3). Petitioners stated in their January 2013 letter that they were "making additional claims for the years covered by the 2012 letters" and were submitting additional documentation to support those claims. See op. Ct. p. 4. If in fact petitioners were making additional claims to which the January 2013 letter was responding, that is a fact that cannot properly be ignored. Whether petitioners made different or additional claims is critical in assessing whether this case differs in a legally significant way from the Friedland cases.[4]

The opinion of the Court declines to examine the substance of petitioners' supplemental claims or to distinguish the Friedland cases on their facts. But

---

[3](...continued)
Cir. 2003); Charter Co. v. United States, 971 F.2d 1576, 1579 (11th Cir. 1992); Ottawa Silica Co. v. United States, 699 F.2d 1124, 1138 (Fed. Cir. 1983).

[4]The opinion of the Court suggests that it will be a daunting mission to ascertain, when ruling on a motion to dismiss, whether the Office is simply reiterating a prior determination or rejecting a new or supplemental claim. See op. Ct. pp. 19-20. We disagree with that assessment. In Friedland II, it was obvious that the claimant, who submitted no new information, was simply quarreling with the prior determination. And in Friedland I, 101 T.C.M. at 1422, the Court had no difficulty discerning that the claimant's supplemental information was "gratuitous[]." The track record so far does not suggest that this exercise will be burdensome. In any event, the Court is obligated to resolve factual disputes that bear upon the propriety of granting a motion to dismiss.

where it actually leaves the <u>Friedland</u> holdings is not entirely clear. The Court says that it "will not follow the holdings in the <u>Friedland</u> cases to the extent they state or imply that it is not possible for the Whistleblower Office to issue, as to a given claim, more than one 'determination' on which our jurisdiction might be based." <u>See</u> op. Ct. pp. 15-16. But this apparent disapproval of the <u>Friedland</u> cases makes little sense, because neither opinion states or implies any such thing.

The Court in <u>Friedland II</u> said that it was confronted with "a substantially identical situation" as in <u>Friedland I</u>, namely, a situation where the Office's subsequent letters "'merely reaffirmed the initial determination in the first letter.'" <u>Friedland II</u>, 102 T.C.M. (CCH) at 248 (quoting <u>Friedland I</u>, 101 T.C.M. (CCH) at 1423). The <u>Friedland</u> cases do not hold that it is <u>impossible</u> for the Office to make more than one determination on the same claim. Rather, they hold that this did not happen on the facts presented because the second letter was not a distinct "determination" but in effect a mere cross-reference to a prior "determination."

The key questions, we think, are whether "the claim" and "the determination" remain the same. The <u>Friedland</u> cases considered the claims not to have changed and treated the subsequent letters as simply reiterating the denial of those claims. But if the claim does change--e.g., if the claimant submits

substantial additional documentation, expands his existing claim, or makes new claims--it is entirely possible for the Office to make a second determination (positive or negative) that will afford us jurisdiction. Indeed, that is exactly what we think happened here: the Office <u>did make</u> a second determination regarding petitioners' universe of claims and, because those claims had changed, we have jurisdiction to review the second determination consistently with the <u>Friedland</u> cases.[5]

If a rule of law is to be generalized from the <u>Friedland</u> cases, it is that, if a claimant fails timely to file a petition in response to a determination letter and receives a subsequent letter reiterating the same determination on the same claim, the subsequent letter does not start another 30-day period for petitioning the Tax Court. The opinion of the Court declines to address that critical question, namely, whether a second, substantially identical, denial letter can start another petition period. The Court rationalizes its refusal to address this problem on the ground that it presents "a hypothetical case." <u>See</u> op. Ct. p. 20. But this is exactly the fact pattern that the Court believed it faced in both <u>Friedland</u> cases. We do not understand how the Court can conclude that the <u>Friedland</u> cases must be

_____

[5]Again, if there is any uncertainty about the substantiality of petitioners' supplemental claims or the Office's denial of them, the proper procedure is to resolve that factual dispute by an evidentiary hearing or otherwise.

disapproved while declining to address as "hypothetical" the fact pattern that they display.

In ruling that a claimant may file a petition in response to any of a series of similar letters involving a negative determination on the same claim, the Court focuses on the phrase "[a]ny determination regarding an award" in section 7623(b)(4). It infers from Congress' use of the word "any" that a claimant may be able to file a petition "in response to more than one letter from the Commissioner." See op. Ct. p. 14. The Court analogizes this situation to one where the IRS sends multiple notices of deficiency for a particular year, enabling the taxpayer to file separate petitions in response to the various notices. See id. pp. 13-14.

This analogy does not hold water. When the Commissioner sends multiple notices of deficiency for a given year, the second notice invariably involves different determinations--e.g., different items of income, different deductions, or different dollar amounts--from those in the first notice. That is not so in the Friedland paradigm. In those cases, the IRS made a determination in the first

letter--that the claim for an award was rejected--and issued a second letter that refused to disturb that very same determination.[6]

In any event, Congress' use of the word "any" will not bear the weight that the opinion of the Court places upon it. A common meaning of "any" is simply "a" or "one." See op. Ct. note 11. In the Friedland cases, the Office made "a determination" in the first letter. The Office then sent the claimant a second letter that said in effect: "We are not changing our determination." That second letter did not constitute a distinct "determination"; it simply repeated the determination that had already been made.

The Court's holding that a claimant may file a petition, at his option, in response to any of a series of letters referring to the denial of his claim is difficult to reconcile with the 30-day jurisdictional filing period that Congress placed in section 7623(b)(4). The Office has not hesitated to send multiple letters to claimants in an effort to demonstrate its good faith in acknowledging their queries and submissions. A claimant who has received a determination letter denying his

---

[6]The Court's analogy is also strained because there is a statutory regime in place to deal with the problem of multiple notices of deficiency. Section 6212(c)(1) prohibits the sending of a second notice of deficiency once the taxpayer has timely petitioned the Court in response to an initial notice of deficiency for the same year, except in cases of fraud, jeopardy and termination assessments, and correction of mathematical errors.

claim and who has neglected to file a Tax Court petition within 30 days may have little difficulty stimulating the issuance by that Office of one or more additional letters reaffirming the previous letter(s). If each subsequent letter falls within the statutory phrase "any determination," claimants can end-run the 30-day jurisdictional filing period with comparative impunity. The Court provides no reason to believe that Congress intended so unlikely a result.[7]

In sum, there is no dispute that the Office can make more than one "determination" with respect to a claimant's claim or universe of claims. If the claim is different, then the determination will be different, and this Court can properly assume jurisdiction over the subsequent determination. That is what we think the Court should do here. But if the claim is not different and the determination is the same, and if the petition is filed more than 30 days after the original

---

[7]In light of the Court's holding, the Office might change its letter-writing habits. Once it has sent the claimant a "determination" that denies his claim--that is, a letter that "constitutes a final administrative decision regarding [his] claim," Cooper, 135 T.C. at 76--any response to a request for reconsideration might simply say: "We issued our determination denying your claim on [date.]" One would hope that the Court would not regard this as a distinct "determination" that begins another 30-day jurisdictional filing period. Otherwise, the Office might be better off just ignoring all subsequent communications from claimants about their rejected claims.

determination, the Court should hold that it lacks jurisdiction, as the Court in the Friedland cases correctly did.[8]

GOEKE, HOLMES, KERRIGAN, and BUCH, JJ., agree with this concurring opinion.

---

[8]On the basis of the text of the February 2013 letter and petitioners' timely petition thereto, the opinion of the Court holds that the February 2013 letter constitutes a "determination" that we may review. During that review, surely respondent will ask us to undertake what the Court suggests is a "knotty factual [inquiry]," see op. Ct. p. 20, as to whether, by the February 2013 letter, the Office simply reiterated a prior determination (respondent's view) or rejected a new or supplemental claim (petitioners' view). Let us assume that the Court finds the former (i.e., that the Office merely reiterated a prior determination). What would the Court then do? Would we put that finding aside and consider the merits of respondent's twice-made determination? If so, we would be sanctioning a clear end run around the 30-day jurisdictional filing provision that Congress has placed in the statute. If we would not put the finding aside, but instead dismiss the case for what at bottom would be petitioners' failure to have petitioned timely in response to the first determination, would we not (however we labeled it) be dismissing for lack of jurisdiction, as we did in the Friedland cases? In any event, the knotty factual inquiry likely cannot be avoided, and we see no reason to postpone making it.

GOEKE and KERRIGAN, JJ., concurring:  We continue to believe that SECC v. Commissioner, 142 T.C. __ (Apr. 3, 2014), was incorrectly decided, and we find the citations of that Opinion in the opinion of the Court in this case to be misleading and unnecessary.  However, the present matter does not involve a liability subject to assessment, which in itself distinguishes it from SECC.

Our dissent in SECC rested on Congress' instruction to treat determinations of worker classification like notices of deficiency.  See id. at __ (slip op. at 29) (Goeke and Kerrigan, JJ., dissenting) (citing section 7436(d)(1)).  On the basis of that instruction, we relied on our notice of deficiency jurisprudence to determine that the letter at issue was not a notice of determination of worker classification.

Congress has not instructed us to treat whistleblower award determinations like notices of deficiency.  We noted this in our SECC dissent in criticizing the Court's reliance on whistleblower cases to bolster its Opinion.  Id. at __ (slip op. at 36).  Similarly, we think the opinion of the Court's references to SECC here are misplaced.

As the opinion of the Court notes, we have often found that generic letters concerning whistleblower awards trigger our jurisdiction under section

7623(b)(4).  On the basis of our whistleblower jurisprudence only, we concur in the result here.