148 T.C. No. 25

UNITED STATES TAX COURT

WHISTLEBLOWER 14377-16W, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14377-16W.                    Filed June 28, 2017.

P has moved to proceed anonymously in this whistleblower
action involving his claim that a corporate taxpayer evaded paying
nearly $100 million in taxes (motion). P, a self-described "analyst of
financial institutions", learned of the corporate taxpayer's claimed tax
abuse from publicly available sources, such as Securities and
Exchange Commission Forms 10-K. P has pending before the Court
a total of 11 cases, involving 21 numbered whistleblower claims and
as many as 50 separate taxpayers. P also has four cases pending
before the IRS, involving six taxpayers. P has moved to proceed
anonymously because he fears that, if his identity as a tax
whistleblower is disclosed, he will suffer both economic and personal
harm.

<u>Held</u>: While we are mindful of our legal system's general
solicitude for confidential informants, P has not made a sufficient
fact-specific case for anonymity. <u>See</u> Rule 345(a), Tax Court Rules
of Practice and Procedure. On balance, P's interest in protecting his

anonymity is outweighed by the public's interest in identifying serial claimants of whistleblower awards filing petitions in the Tax Court.

Held, further, we will deny the motion.

[Sealed].

Jonathan D. Tepper, for respondent.

OPINION

HALPERN, Judge: Petitioner brought this action pursuant to section 7623(b) for us to review respondent's denial of his claim for a so-called whistleblower award.[1] Concurrently with filing the petition, petitioner moved pursuant to Rule 345(a) to proceed anonymously (motion), and we temporarily sealed the record in the case pending resolution by the Court of the motion.

---

[1]All section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. We use male-gender personal pronouns to refer to petitioner and to the anonymous whistleblowers in the cases we cite for convenience and without intention to identify their actual genders.

Respondent objects to our granting the motion.  For the reasons stated, we will deny the motion.[2]

## Background

Petitioner assigned error to respondent's determination to deny him a whistleblower award.  He avers, among other things, that the corporate taxpayer with respect to which he is claiming a whistleblower award (taxpayer) understated its income by numerous improper actions, including "failing to report millions of dollars in income received from the sale of gift cards".  In all, petitioner claims, taxpayer "evaded paying nearly $100 million in taxes."  In a declaration in support of the motion, he states that he discovered the materials and facts relevant to his whistleblower claim in his capacity as an "analyst of financial institutions."  He prays for anonymity because "he legitimately fears that if his identity as a tax

---

[2]Nevertheless, we have changed the caption of the case to accord petitioner anonymity in case he wishes to appeal our denial of the motion.  At least four United States Courts of Appeal have held that orders denying leave to proceed under a pseudonym are immediately appealable as collateral orders.  See Raiser v. Brigham Young University, 127 F. App'x 409, 410 (10th Cir. 2005); Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1066 (9th Cir. 2000); James v. Jacobson, 6 F.3d 233, 237 (4th Cir. 1993); S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 712 (5th Cir. 1979).  If within 30 days of our issuing our order denying the motion petitioner does not file with the Clerk of the Court a notice of appeal, we will change the caption back to reflect the petition as filed.

whistleblower is disclosed, he will be blacklisted from his profession, and he and his family will suffer severe financial harm."

Following receipt of the motion, we conferred with the parties by telephone to solicit respondent's position on granting the motion and to inform petitioner that we were aware of 8 (now 10) other cases before the Court in which he is appealing the Commissioner's determination to deny him a whistleblower award. The 11 cases involve in excess of two dozen taxpayers, and all appear to have resulted <u>not</u> from petitioner's employment by, or other close relationship to, the target taxpayer but from his examination of publicly available materials, such as Securities and Exchange Commission (SEC) Forms 10-K. We informed petitioner that the public has an interest in knowing the identity of persons using the courts, and that, in deciding motions to proceed anonymously, the Court must resolve the competing societal interests at stake. <u>See, e.g.</u>, <u>Whistleblower 14106-10W v. Commissioner</u>, 137 T.C. 183, 205 (2011) (balancing societal interests of (1) protecting identity of confidential informant with (2) people's right to know who is using courts). Following our teleconference, we ordered respondent to respond in writing to the motion, setting forth the particulars of his objection, and we ordered petitioner to reply, addressing not only respondent's grounds but also why petitioner's use of the Tax Court to pursue his numerous whistleblower claims is not a matter of

public interest that should weigh against keeping his identity anonymous. We also ordered petitioner to inform us of how many whistleblower claims that are not the subject of petitions to the Tax Court he has pending before the Internal Revenue Service (IRS). The parties complied with our order.

Respondent's Grounds for Objecting

Respondent's principal objection is that petitioner has failed to set forth a sufficient, fact-specific basis for protecting his confidentiality that would override the public's strong, legitimate interest in having access to the record in this case. Respondent adds that petitioner has no need for anonymity because he obtains the information upon which he bases his whistleblower claims from publicly available sources accessible on the internet and not from confidential, or insider, sources. Respondent lists seven failures by petitioner to comply with the requirement of Rule 345(a) to provide a sufficient, fact-specific basis for anonymity. Those are petitioner's failures to (1) identify his current employment and how disclosure would affect that employment, (2) identify the specific circumstances of his discovery of the materials and facts submitted to respondent in support of his whistleblower claim, (3) disclose that his information is based on publicly available documents, such as "SEC 10-K filings", (4) identify his relationship, if any, to taxpayer, (5) provide information concerning present or prospective

clients, (6) identify his professional credentials and how those credentials would be affected by a denial of anonymity, and (7) support his allegation that, if his identity were known, he would be blacklisted.

With respect to the balancing of societal interests, respondent states:

It is in the public's best interest to understand the circumstances surrounding these filings, including the frequency of filings by a single petitioner that may be based not upon insider information, but upon publically available information. This type of information is valuable to the public in understanding how individuals are using the Court system, including evaluating whistleblower proceedings before the U.S. Tax Court.

Petitioner's Reply

Petitioner claims that he is a retired certified public accountant (C.P.A.) and his primary occupation is assisting his spouse in managing and operating a registered investment advisory business. He further claims: "Disclosure would have a negative impact on my domestic relationship with my spouse, posing a threat to our domestic circumstances, and would impair my ability to assist with * * * [the business] and earn income from the management of the practice." He fears that disclosure of his identity might "alienat[e]" business partners who might have relationships with taxpayers he identifies. He also fears retribution from political figures close to those taxpayers.

Petitioner answers respondent's claim that he failed to identify the circumstances of his discovery of materials leading to his whistleblower claims by identifying financial statements, Forms 10-K, and other available data as the source of his identification of publicly held restaurant companies that may have violated tax rules relating to the recognition of "gift card" income. He concedes: "[My] analysis emanated from public information". He adds: "The most important source of information utilized by Petitioner includes the extensive data, often encompassing thousands upon thousands of pages which * * * [taxpayers identified by petitioner] would have filed with the SEC."

He concedes that he has no relationship to any taxpayer that he has identified to the IRS, "other than as an investment analyst and claimant."

He does not identify present or prospective clients, stating: "[I]nformation relating to Petitioner's current or prospective clients is highly confidential". He does add that the investment advisory business relies "on relationship[s] with normal everyday private citizens and small businesses."

He states that he no longer holds a license as a C.P.A. and his only certification is a "Series 65 Certification" as a registered investment adviser.

In response to respondent's claim that petitioner has failed to provide support for his claim that revealing his whistleblower activities will cause him to

be blacklisted, petitioner points to no specific risk but makes only generalized claims, for example:

> Petitioner does not believe that there is justification for singling Petitioner out, given the history and practice as to these matters and that doing so would lend a chilling effect to any future Whistle-blowers relying on industry expertise, specialized knowledge and analysis of public information or data, in filing Whistleblower claims consistent with governmental policy objectives. Petitioner believes that this would cut sharply against the very purpose and intent of the Tax Whistleblower laws by curtailing public participation in support of those laws.

In response to our order that petitioner inform us of how many whistleblower claims he has pending before the IRS that are not the subject of petitions to the Tax Court, he answers that he "has four 'submissions' and associated claims pending before the Internal Revenue Service." He adds that one submission involves three claims associated with one taxpayer, two submissions involve one claim each associated with two taxpayers, and the fourth involves one taxpayer. Also, he believes that there are 51 claim numbers issued in connection with submissions that were supplemental to his cases before the Court.

## Discussion

Rule 345 concerns itself with privacy protections for filings in whistle-blower actions. Paragraph (a) of the Rule allows petitioners in whistleblower actions to move the Court for permission to proceed anonymously. The movant

must set forth a sufficient, fact-specific basis for anonymity.  Id.  We will permit a whistleblower to proceed anonymously if the whistleblower presents a sufficient showing of potential harm that outweighs counterbalancing societal interests in knowing the whistleblower's identity.  Whistleblower 12568-16W v. Commissioner, 148 T.C. __, __ (slip op. at 5) (Mar. 22, 2017).

In only five reports have we addressed a whistleblower's motion to proceed anonymously.  In Whistleblower 14106-10W v. Commissioner, 137 T.C. 183, we considered the claim of a whistleblower who feared that professional stigma, retaliation, and economic distress would result from the disclosure of his identity. He had provided information to the IRS concerning a former employer's alleged tax underpayments.  Id. at 184-185.  Assuming that he had acquired that information not by chance but in the normal course of employment and that he was privy to internal deliberations and communications regarding the events that allegedly gave rise to the underpayment, we found that revealing his status as a tax whistleblower in these circumstances would not only invade the whistleblower's legitimate privacy interest as a confidential informant but also would likely cause severe damage to his standing in the professional community that provided his customary source of livelihood and could well jeopardize his employment.  Id. at 203-204.  In calculating the societal interest of the people's right to know who is

using their courts, we took into account that we were disposing of the case on respondent's motion for summary judgment on a threshold legal issue that did not depend to any appreciable extent on the whistleblower's identity. Id. at 205. We concluded that the public's interest in knowing his identity was relatively weak, id., and, for that and other reasons, we determined to grant his motion to proceed anonymously.

In Whistleblower 10949-13W v. Commissioner, T.C. Memo. 2014-94, at *3, we accepted as true that U.S. Department of Justice attorneys had informed the whistleblower that the taxpayers he had identified were connected with organized crime and terrorism and could resort to physical force or harm in connection with their activities. Also, we accepted as true that he had received a death threat from one of the taxpayers through its counsel. Id. We found that the harm that could befall him outweighed the societal interest in knowing his name. Id. at *6. We determined to grant his motion to proceed anonymously. Id.

In Whistleblower 11332-13W v. Commissioner, T.C. Memo. 2014-92, at *1-*3, we accepted as true that, when the whistleblower had raised to the target taxpayer concerns over its tax structure, the target had used physical force and armed men to intimidate him and to prevent disclosure. We also accepted as true that he had received a death threat through the target's counsel and that the

Government had offered to place him in the witness protection program. Id. at *4. Finding a risk of extreme physical harm to him and his family, we determined to grant his motion to proceed anonymously. Id. at *12.

In Whistleblower 13412-12W v. Commissioner, T.C. Memo. 2014-93, at *5-*6, the whistleblower, an ex-employee of the target taxpayer, alleged no physical threat but alleged the risk of financial retaliation (loss of pension benefits), social and professional stigma, and economic duress. Although we voiced our reservations about the likelihood of the prospect of financial retaliation, we found that the nature of the potential harm to him outweighed the societal interest in knowing his identity. We determined to grant his motion to proceed anonymously. Id. at *6.

In Whistleblower 12568-16W v. Commissioner, 148 T.C. __, the whistleblower claimed to have learned of fraudulent actions by the target taxpayer during his prior employment by an entity related to the target taxpayer. He alleged possible retaliation against him and his family, resulting in possible physical harm to himself, professional and personal ostracism, economic loss, and danger to his family. Id. at __ (slip op. at 3). We determined to grant his motion to proceed anonymously, taking into account that, in the early stage of a whistleblower case, the societal interest in knowing the whistleblower's identity may be relatively

weak.  See id. at __ (slip op. at 4-6).  We cautioned, however, that, as the case progressed, the balance that we initially found to weigh in favor of anonymity might change, with the public's interest in learning the whistleblower's identity outweighing his continued concern for anonymity.  Id. at __ (slip op. at 9).

Unlike the claimants in three of the reports summarized above, Whistleblower 10949-13W, Whistleblower 11332-13W, and Whistleblower 12568-16W, petitioner makes no plausible claim that he was (or may be) threatened physically.  Nor does he claim an employee relationship during which he was privy to internal deliberations and communications regarding the possible underpayment of tax, the revelation of which circumstances we said in Whistleblower 14106-10W v. Commissioner, 137 T.C. at 200-203, would likely severely damage a whistleblower's professional standing in the community in which he customarily earns his living and could well jeopardize his employment.  And petitioner is at no risk of the loss of employment-related benefits, such as retirement benefits.  See Whistleblower 13412-12W v. Commissioner, T.C. Memo. 2014-92.

Unlike the claimants in the five reports summarized above, petitioner has not identified a taxpayer who, upon learning petitioner's identity, would have the power to, and might be expected to, act against him.  And while we acknowledge

our legal system's general solicitude for confidential informants, see Whistleblower 14106-10W v. Commissioner, 137 T.C. at 200, and we accept that petitioner may suffer some embarrassment or annoyance from our denying the motion, his fears of marital discord, the alienation of unnamed business partners, and retribution from unnamed political figures are speculative, and, thus, petitioner has not provided us with a sufficient "fact-specific" justification for permission to proceed anonymously. See Rule 345(a). Nevertheless, given the early stage of this case, we might otherwise be inclined to weigh the people's interest in knowing who is using the courts as so weak as to give petitioner the benefit of the doubt, at least temporarily. See Whistleblower 12568-16W v. Commissioner, 148 T.C. at __ (slip op. at 5-7). But petitioner is an unusual claimant to our whistleblower jurisdiction. He has so far brought 11 whistleblower cases in the Tax Court. He has in his supporting papers identified 21 numbered whistleblower claims (whistleblower claims with a separate processing number assigned by the IRS), and he has in those papers identified by name 26 taxpayers and included by reference (without naming them) 24 more. He also has pending before respondent four "submissions" (involving, it appears, six

numbered whistleblower claims and six taxpayers).[3] He also admits that he has before respondent 51 numbered claims supplemental to claims in cases already before the Court. Each of those as-yet-unresolved supplemental claims is potentially the source of another adverse determination and a resulting petition to the Court.[4] Petitioner's recourse to publicly available materials to identify supposed tax abuses imposes no natural limit other than his own industriousness on the number of cases he could bring. His lack of an employment or other close relationship to the taxpayers he identifies suggests that he has no familiarity with a taxpayer's basis or rationale for taking what petitioner considers an abusive position. For those reasons, serial claimants of whistleblower awards may disproportionately burden the Court with petitions only superficially meritorious. Moreover, the phenomena of potential claimants of whistleblower awards

---

[3]There is not necessarily a one-to-one correspondence between numbered whistleblower claims and the number of taxpayers identified to the IRS by a whistleblower on a single IRS Form 211, Application for Award for Original Information. See Internal Revenue Manual pt. 25.2.2.4(2) (Aug. 7, 2015) (multiple taxpayers identified in a single claim "may" each receive a separate claim number). And while one adverse whistleblower determination will generally give rise to no more than one Tax Court petition (i.e., one whistleblower case), the determination may address more than one numbered claim, each of which itself may identify more than one taxpayer with respect to whom the petitioner seeks a whistleblower award.

[4]See Comparini v. Commissioner, 143 T.C. 274 (2014) (Whistleblower Office may issue as to a given claim more than one determination).

searching publicly available documents for evidence of tax abuse is not insignificant. Apparently, a cottage industry has sprung up involving mining publicly available documents for the chance to claim a bounty from the IRS.[5] Unless we identify serial filers by name, the public will be unable to judge accurately the extent to which the serial filer phenomenon has affected the work of the Tax Court because the public would not know whether any particular petitioner of an adverse whistleblower determination had filed petitions appealing other adverse whistleblower determinations. Finally, addressing motions by all whistleblowers to proceed anonymously requires special handling by the Court; for example, the record is sealed temporarily, the normal procedures for electronic filing and electronic service cannot at this time be used, the case must be assigned to a judicial officer earlier than normal in order to address the motion, and, in

---

[5]The New York Times reported on Sept. 11, 2012:

> Since the law was strengthened in 2006, it has spawned a cottage industry of whistle-blower lawyers and private investigators. They have generated hundreds of claims alleging tens of billions of dollars in tax evasion. In a few cases, hedge funds have actually invested in the cases, paying whistle-blowers cash up front in exchange for a percentage of any award they ultimately collect.

David Kocieniewski, "Whistle-Blower Awarded $104 Million by I.R.S.", N.Y. Times, Sept. 11, 2012, http://www.nytimes.com/2012/09/12/business/whistle-blower-awarded-104-million-by-irs.html.

some cases, trials and hearing may need to be closed to the public to protect the whistleblower's anonymity. The public may wish to know the extent to which petitioners with numerous whistleblower claims require such special handling.[6]

## Conclusion

On the facts before us, mindful of our legal system's general solicitude for confidential informants, but balancing petitioner's weak "fact-specific" justification for anonymity against the public's interest in knowing who is using the Tax Court to bring serial whistleblower claims, we find that the public's interest in knowing prevails. As stated, we will deny the motion.

An appropriate order will be issued denying petitioner's motion.

---

[6]We note that, although the Commissioner has obligated himself to use his best efforts to protect the identity of whistleblowers, that obligation is not absolute, and, in some circumstances, the Commissioner may need to reveal a whistleblower's identity (for example, if the whistleblower is to be called as a witness in a judicial proceeding). See sec. 301.7623-1(e), Proced. & Admin. Regs. The risk to a whistleblower that he will not remain anonymous is present from the time he submits a whistleblower claim to the IRS.