150 T.C. No. 2

UNITED STATES TAX COURT

KENNETH WILLIAM KASPER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22242-11W.                    Filed January 9, 2018.

R rejected P's claim for a whistleblower award under I.R.C. section 7623(b), stating that the information P provided about corporate taxpayer T "did not meet our criteria for an award." P argues his information was used by R to keep "held open" R's bankruptcy claim against T, which eventually led to a settlement payment. The Court granted P's motion to compel the discovery of information about R's involvement in T's bankruptcy proceedings over R's objection that the information was outside of R's administrative record.

<u>Held</u>: When reviewing R's determinations under I.R.C. section 7623(b) we will limit the scope of our review to the administrative record.

<u>Held</u>, <u>further</u>, the administrative record may be supplemented if it is incomplete.

   Held, further, the applicable standard of review for determinations under I.R.C. section 7623(b) is abuse of discretion.

   Held, further, R did not abuse his discretion in rejecting P's claim for a whistleblower award.


Kenneth William Kasper, pro se.

Rachel G. Borden, John T. Arthur, and Patricia P. Davis, for respondent.


   HOLMES, Judge: In this case a whistleblower seeks an award of over $11 million. Kenneth Kasper informed the IRS that his former employer failed to pay overtime wages to its employees and that it therefore didn't withhold or remit the taxes associated with the unpaid wages. The IRS determined that Kasper's tip wasn't related to a federal tax issue and denied his award application. Kasper then petitioned this Court to challenge that determination. He claims that the IRS used his information to keep "held open" a bankruptcy claim against his former employer that eventually led to a $37.5 million payment to the United States Treasury. He wants a share.

## FINDINGS OF FACT

   While working for his former corporate employer (target), Kasper detected what he thought was a long-term pattern of forced and uncompensated overtime.

At first he complained internally about this "no overtime policy," but he then decided to ask the IRS to investigate his allegations. He filed a Form 211, Application for Award for Original Information, in January 2009. On this form he claimed that the target owed its employees millions of dollars in overtime pay and told the IRS that if the target were required to pay the overdue wages, the IRS would benefit because it would receive the payroll taxes withheld on that compensation. What happened to the Form 211 for nearly a month is unclear, but it was eventually received by the IRS's Whistleblower Office (WBO) in late February 2009. Because the Form 211 identified both the target and its chief executive officer (CEO) in the alleged violation, the WBO assigned Kasper's information two claim numbers--one for the target (target claim) and one for the CEO (CEO claim). The next day the WBO forwarded the Form 211 to the IRS's Information Claims Examination (ICE) Unit in Ogden, Utah, where it was decided that Kasper's claims should be evaluated by the Large Business and International (LB&I) Unit.

The Form 211 ended up on the desk of LB&I Classifier Brett Roskelley in May 2009. Roskelley is one of three classifiers in the LB&I Unit. His job is that of a gatekeeper--he looks at information as it comes in and decides if it should be forwarded to other parts of the unit for investigation. When Kasper's information

came in, Roskelley thought about it and decided that Kasper had identified a Department of Labor issue, not an IRS issue. He therefore did not pass the Form 211 on for investigation but recommended sending letters to Kasper rejecting his claims.

In June 2009 the IRS followed Roskelley's suggestion and drafted letters to deny both of Kasper's claims. Kasper, however, says he never received them. He claims he learned about the denial of the CEO claim only in May 2010 when he wrote to ask about the status of his award claims and the WBO stapled the letter denying his CEO claim--but not a copy of the letter that denied his target claim--to its response. This led to Kasper v. Commissioner (Kasper I), 137 T.C. 37 (2011), where we decided that the Commissioner had failed to prove that the denial letters were properly mailed and that Kasper had indeed timely filed a petition with respect to the CEO claim. In January 2012 we entered an order and decision disposing of the CEO claim because Kasper submitted neither any evidence that the IRS had begun judicial or administrative proceedings against the CEO nor any evidence that the IRS had collected any federal tax from the CEO as a result of his information. Kasper I, docket No. 13399-10W (Jan. 10, 2012) (order and decision). The only claim at issue in this case is therefore the target claim.

In Kasper I we stated: "With respect to the denial letter on the [target] claim, there is no direct evidence of mailing and, therefore, the time has yet to begin in which petitioner may file a petition as to that claim." Kasper I, 137 T.C. at 45 n.7. After we released the opinion in Kasper I, Kasper wrote the IRS to ask for "sufficient notice" of a determination on the target claim. In September 2011 the IRS obliged by mailing him a copy of its June 2009 denial letter for the target claim. This letter told Kasper that "the information [he] furnished did not meet [the IRS's] criteria for an award," but that the IRS couldn't give him specific reasons for rejecting his claim because of "Federal disclosure and privacy laws." The letter instead recited a boilerplate list of common reasons for not allowing an award:

- Your information was insufficient to begin an investigation.

- Your information did not cause an investigation or result in the recovery of taxes, penalties, or fines.

- The Internal Revenue Service (IRS) already had the information you provided, or the information was available in accessible public records.

- The taxes recovered were too small to warrant a reward. Our policy states we do not pay rewards less than $100.

In response to the letter, Kasper timely filed a petition with this Court.[1]

Kasper began to raise new theories and arguments that focused on the target's bankruptcy proceedings, which had begun in January 2009, just about the same time that Kasper had first sent his Form 211 to the IRS. He pointed out that in February 2009 the IRS had filed a proof of claim asserting that the target owed over $15 million in income tax, FUTA, and FICA withholding, plus unpaid excise taxes.[2] In May 2009 the IRS amended its proof of claim to reduce the amount

---

[1] Kasper was a resident of Arizona at the time he filed his petition. Absent a stipulation by the parties, however, this case appears to be appealable to the D.C. Circuit. See sec. 7482(b)(1) (flush language) (stating that the D.C. Circuit is the proper appellate venue for review of Tax Court decisions in cases where no other venue rule applies); see also Ware v. Commissioner, 499 F. App'x 957, 959 n.1 (11th Cir. 2012) ("Although the venue for most appeals from the Tax Court is geographically tied to a petitioner's legal residence, the normal route for a whistleblower claim is an appeal to the Court of Appeals for the District of Columbia."), aff'g T.C. Memo. 2011-254; IRS Chief Counsel Notice CC-2015-006 (June 30, 2015) (noting that it is IRS's position that venue lies in the D.C. Circuit for whistleblower cases). (All section references are to the Internal Revenue Code unless we say otherwise.)

[2] FICA generally refers to taxes imposed on employers and employees under the Federal Insurance Contributions Act. See secs. 3101, 3111. It is a 15.3% tax on wages--up to an annual limit--that comprises a 12.4% Social Security tax and a 2.9% Medicare tax. Secs. 3101, 3111. Wages over the annual limit are subject only to the 2.9% Medicare tax. Secs. 3101, 3111, 3121(a)(1). Employers and employees each pay half of the FICA taxes, and the employer is required to withhold the employee's portion. Secs. 3101, 3102(a), 3111. FUTA generally refers to taxes imposed on employers under the Federal Unemployment Tax Act. See sec. 3301. It is a 6.0% tax on the first $7,000 in wages paid to each employee.

(continued...)

claimed to about $170,000--all for unpaid corporate income tax, interest, and penalties. Three months after that, the IRS filed a second amended claim, which wildly increased the debt the IRS said the target owed to more than $3 billion, again all for unpaid corporate income tax, interest, and penalties.[3] This second amended claim specifically showed $0 for "unassessed, unliquidated and contingent U.S. federal FICA withholding tax" because the target had not yet filed a return or provided the information the IRS would need to calculate the amount of FICA owed. This paper bombardment had its intended effect, and the IRS and the target negotiated a closing agreement in February 2010. The target agreed to pay the IRS $37.5 million in full satisfaction of its tax liabilities for the years in

---

[2](...continued)
Secs. 3301, 3306(b). FICA and FUTA taxes are also referred to as employment taxes or payroll taxes. See Bascos v. Commissioner, T.C. Memo. 2008-294, 2008 WL 5535404, at *1 n.2.

[3] The record in this case contains the IRS's original proof of claim, but not the two amended claims. A court, however, may take judicial notice of another court's records, so we will do so here. See St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979) (stating that federal courts may take notice of proceedings in other courts "if those proceedings have a direct relation to matters at issue"); Perry Funeral Home, Inc. v. Commissioner, T.C. Memo. 2003-340, 2003 WL 22953114, at *3; see also Fed. R. Evid. 201.

dispute and agreed that those liabilities related to "withholding tax, pursuant to Section 1441 of the Internal Revenue Code."[4]

Kasper admits the WBO didn't independently act upon his Form 211, but he claims that he submitted the same information to the IRS's Fresno office on a Form 3949-A, Information Referral, dated January 26, 2009.[5] He believes the IRS noted this information and as a result "held open" its proof of claim--and he points to an email chain discussing the IRS's bankruptcy claim against the target on which Roskelley was cc'ed. This tangle of correspondence both from Kasper and within the IRS is the subject of much dispute, but everyone admits that the bankruptcy proceeding did eventually lead to the collection of $37.5 million.

Kasper wants a share. During the discovery phase of this case, he moved to compel the Commissioner to produce the IRS's files on its bankruptcy claim against the target. We found that the information sought was discoverable and granted Kasper's motion over the Commissioner's objection. We tried the case to

---

[4] Section 1441 governs the withholding of tax on nonresident aliens.

[5] The Commissioner questions the authenticity of Kasper's Form 3949-A and insists that he has no record of it. This is understandable--the IRS destroys all information referrals after 90 days unless it takes action. Internal Revenue Manual (IRM) pt. 1.15.29, Exhibit 1.15.29-1(47)(2) (July 1, 2005). Kasper kept a copy, though, as a text file (.txt) that he saved electronically before mailing the printed copy.

establish the contents of the administrative record and ordered the parties to brief the issues of the scope and standard of review in whistleblower cases to help us figure out both what we can look at and how to look at the IRS's work in whistleblower cases.

## OPINION

As a preliminary matter, we note that section 7623(b)(4) gives us jurisdiction over the appeal of any determination regarding whistleblower awards, but only if the appeal is filed within 30 days of the determination. In Kasper I, 137 T.C. at 45 n.7, we held that the IRS failed to prove that it had ever mailed its June 2009 letter denying the target claim, which meant Kasper's 30-day window to petition this Court had not begun. The IRS then mailed--or perhaps remailed[6]-- the denial letter on September 1, 2011. Kasper filed his petition with the Court on September 11, 2011, which was well within the 30-day window. We therefore have jurisdiction over this case.

The rest of this case will be decided on causation--did the IRS "proceed[] with any administrative or judicial action * * * based on information brought to the [IRS's] attention" by Kasper that resulted in the collection of proceeds? See

---

[6] Even if the determination was actually remailed, we have held that we have jurisdiction over *any* timely petitioned whistleblower determination, not just the first in time. Comparini v. Commissioner, 143 T.C. 274, 281-83 (2014).

sec. 7623(b)(1). Since the enactment of section 7623(b) in 2006, few--if any-- whistleblower cases have reached this Court on their merits, so to answer this question we must analyze the proper scope and standard of review to apply in whistleblower cases as well as the applicability of general principles of administrative law. We will begin with the scope of review--what evidence we look *at*. We will then discuss the standard of review--what evidence we look *for*.[7] We end with an analysis of the merits of Kasper's award claim based on the record as we define it.

I.      Scope of Review

        A.      General Rules

The Commissioner argues that we should limit our review to the administrative record--in other words, that we should apply the record rule.[8] We

---

[7] As the Tenth Circuit put it, "[t]he *scope* of judicial review refers merely to the evidence the reviewing court will examine in reviewing an agency decision. The *standard* of judicial review refers to how the reviewing court will examine that evidence." Franklin Sav. Ass'n v. Office of Thrift Supervision, 934 F.2d 1127, 1136 (10th Cir. 1991) (emphasis added).

[8] "The record rule refers to the general rule of administrative law that a court can engage in judicial review of an agency action based only on consideration of the record amassed by the agency (the administrative record)." Ewing v. Commissioner, 122 T.C. 32, 58 (2004) (Halpern and Holmes, JJ., dissenting) (citing 2 Pierce, Administrative Law Treatise, sec. 11.6, at 822 (4th ed. 2002)), vacated, 439 F.3d 1009 (9th Cir. 2006).

have no whistleblower cases on point, and we will begin by searching for the right default rules. We'll start with the Supreme Court, which has held that "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, * * * consideration is to be confined to the administrative record and * * * no de novo proceeding may be held." United States v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963). The general rule under the Administrative Procedure Act (APA)[9] is that "review of an

---

[9] Administrative Procedure Act (APA), 5 U.S.C. secs. 551-559, 701-706 (2006). The APA supplies the default rules for judicial review of agency action and may be superseded or modified by a subsequent statute only if the statute does so expressly. Id. sec. 559; see also Ninilchik Traditional Council v. United States, 227 F.3d 1186, 1194 (9th Cir. 2000) (reading Dickinson v. Zurko, 527 U.S. 150 (1999), to mean that APA section 706 "functions as a default judicial review standard"); Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 n.12 (D.C. Cir. 1995) ("[T]he APA provides a default standard of judicial review—arbitrary and capricious—precisely for situations * * * where a statute does not otherwise provide a standard of judicial review"). The Supreme Court has recognized "the importance of maintaining a uniform approach to judicial review of administrative action" and held that it would not "carve out an approach to administrative review good for tax law only." Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 55 (2011) (quoting Dickinson, 527 U.S. at 154); see also Antioco v. Commissioner, T.C. Memo. 2013-35, at *24; Amandeep S. Grewal, "Taking Administrative Law to Tax", 63 Duke L.J. 1625, 1626 (2014); Kristin E. Hickman, "Goodbye Tax Exceptionalism", Engage: J. Federalist Soc'y Practice Grps. 4, 5 (Nov. 2011) ("The D.C. Circuit's recent en banc decision in *Cohen v. United States* is less immediately consequential but, consistent with the Supreme Court's policy of administrative law uniformity, represents a further shift in favor of bringing tax administration back in line with administrative law norms") (citing Cohen v. United States, 650 F.3d 717 (D.C. Cir. 2011) (en banc)).

agency decision is limited to the administrative record." Wilson v. Commissioner, 705 F.3d 980, 991 (9th Cir. 2013) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)), aff'g T.C. Memo. 2010-134. But this is a default rule, and the APA's general provisions do not supersede specific statutory provisions. See Porter v. Commissioner, 130 T.C. 115, 118 (2008) (citing Ewing v. Commissioner, 122 T.C. 32, 50 (2004) (Thornton, J., concurring), vacated, 439 F.3d 1009 (9th Cir. 2006)); see also Wilson, 705 F.3d at 990. One conspicuous exception to the default "record rule" is our deficiency jurisdiction under section 6213(a)--a "special statutory review proceeding," 5 U.S.C. sec. 703, that was enacted long before the APA. Section 6213(a) authorizes us to "redetermin[e]" a tax deficiency, and our scope of review has historically been *de novo*. See Ax v. Commissioner, 146 T.C. 153, 161-63 (2016); see also QinetiQ US Holdings, Inc. & Subs. v. Commissioner, 845 F.3d 555, 560 (4th Cir. 2017) ("Some agency-specific statutes, however, provide materially different procedures for judicial review that predate the APA's enactment. One such example is the Internal Revenue Code (the Code), which authorizes de novo review in the tax court of a Notice of Deficiency"), aff'g T.C. Memo. 2015-123.

This case now calls on us to look at the whistleblower statute--section 7623, a relatively recent addition to our *non*deficiency jurisdiction--to see whether

anything there trumps the default rules. Section 7623 authorizes the IRS to pay awards to individuals--whistleblowers--who provide actionable information about others who underpay their taxes. Before December 2006 such awards were completely discretionary and not subject to judicial review. See sec. 7623(a); Kasper I, 137 T.C. at 43 (citing Internal Revenue Manual (IRM) pt. 25.2.2.13 (Dec. 30, 2008)); Wolf v. Commissioner, T.C. Memo. 2007-133, 2007 WL 1556090, at *2. With the enactment of the Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. A, sec. 406, 120 Stat. at 2958, however, Congress made some whistleblower awards nondiscretionary and gave us jurisdiction to hear the appeals of whistleblowers disgruntled by the Commissioner's refusal to give them what they thought they deserved. See sec. 7623(b); Whistleblower 10949-13W v. Commissioner, T.C. Memo. 2014-106, at *8. Section 7623(b)(4) states "[a]ny determination regarding an award under [section 7623(b)] may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)."

That is all the direction Congress offered. The keen-eyed observer may squint but will find nothing in this language that establishes any rules about judicial review. Under Carlo Bianchi this lack of congressional guidance suggests that we should limit our scope of review in whistleblower cases to the

administrative record.  See 373 U.S. at 715.  The default provisions of the APA likewise call for review confined to the administrative record since section 7623(b) was promulgated after the APA and fails to expressly provide for a different review process.  See 5 U.S.C. secs. 559, 706.

That would make our analysis brief.  But any hope of brevity here is forlorn --though we have no precedents on the scope of review in whistleblower cases, we have proven able to tease out *implied* scopes of review in our other areas of nondeficiency jurisdiction.  We will survey the same sources we did in those cases to make sure none was implied in section 7623(b).  The first such source is legislative history, but it sheds no light on this darkness.  Can we find some illumination in other parts of the Code?

### 1.    Section 6015

Looking first at innocent-spouse relief, section 6015 provides that an individual "may petition the Tax Court * * * to determine the appropriate relief available to the individual."  Sec. 6015(e)(1)(A).  In determining what type of judicial review to apply in innocent-spouse cases, we compared section 6015 to deficiency cases arising under sections 6213 and 6214.  See Porter, 130 T.C. at 118; Ewing, 122 T.C. at 37-38.  We reasoned that there was no material difference between Congress's use of the word "determine" to grant us jurisdiction under

section 6015 and its use of "redetermine" for the same purpose under sections 6213 and 6214.  Porter, 130 T.C. at 119; Ewing, 122 T.C. at 38.  Even though section 6015 postdated the APA, we found that it was "part and parcel" of the Code's longstanding specific framework for reviewing deficiency determinations under a *de novo* scope of review.  Porter, 130 T.C. at 118.  We therefore concluded that the default provisions of the APA were inapplicable and that Congress intended that we apply a *de novo* scope of review in innocent spouse cases.  Porter, 130 T.C. at 119, 121-22; Ewing, 122 T.C. at 37-39.

The same cannot be said for whistleblower cases.  Section 7623(b)(4) says that a whistleblower-award determination "may, within 30 days of such determination, be *appealed* to the Tax Court."  (Emphasis added.)  If Congress's use of "determine" was as important as our caselaw tells us it was, then the use of "appeal" in a jurisdictional grant is telling.  In Porter, for example, we found that the Eighth Circuit's application of the record rule in cases brought under section 6330(d)--which allowed a taxpayer to "*appeal* [a collection due process] determination to the Tax Court," but see infra note 12--had no bearing on the scope of review for section 6015 cases where we "determine" whether a taxpayer is entitled to relief, Porter, 130 T.C. at 120 (emphasis added) (citing Robinette v. Commissioner, 439 F.3d 455 (8th Cir. 2006), rev'g 123 T.C. 85 (2004)).

Similarly, the Ninth Circuit found that giving a taxpayer the right to "appeal" implies that we may be confined to considering only the administrative record, but that the use of "determine" in a jurisdictional grant suggests a *de novo* review. Wilson, 705 F.3d at 988; see also Commissioner v. Neal, 557 F.3d 1262, 1276 (11th Cir. 2009) ("This 'appeal' language in § 6330 is materially different from § 6015(e), which does not use the word 'appeal' but instead authorizes the Tax Court to 'determine' the appropriate relief. This shows that Congress knows how to use the term 'appeal' and that Congress meant something different when it authorized the Tax Court in § 6015(e) 'to determine the appropriate relief available' to a taxpayer."), aff'g T.C. Memo. 2005-201. For this reason alone we hold that section 7623 falls outside of our normal *de novo* "statutory framework" and therefore we must revert back to the default scope of review provided by the APA--review limited to the administrative record.

We also note that the normal rationales for applying a *de novo* scope of review are not present in whistleblower cases. In Ewing we declined to apply the record rule to innocent-spouse cases in part because we were concerned about consistency. 122 T.C. at 42. We explained that a request for innocent spouse relief could be raised as an affirmative defense in a deficiency proceeding, as a stand-alone request after the Commissioner had issued a final determination

denying relief, or as a stand-alone request when the Commissioner had failed to act within six months of the taxpayer's request.  Id.  Since we apply a *de novo* scope of review in deficiency proceedings, we reasoned we should do the same for other section 6015(f) cases.  Id. at 42-43.

There are no such consistency concerns here.  There's only one door whistleblowers can enter--the one unlocked by a determination from the IRS and opened by a timely petition with this Court.  Sec. 7623(b)(4); see also Jacobson v. Commissioner, 148 T.C. __, __ (slip op. at 5) (Feb. 8, 2017); Whistleblower 11332-13W v. Commissioner, 142 T.C. 396, 403 (2014); DaCosta v. United States, 82 Fed. Cl. 549, 555 (2008).

Section 6015(e)(4) expressly allows for intervention in innocent-spouse cases.  This, too, might be an important difference, as we noted in Ewing, where we observed that an intervenor likely needs the opportunity to provide evidence that is not already a part of the administrative record.  122 T.C. at 43; see also Wilson, 705 F.3d at 989.  But there is nothing like that here--section 7623 doesn't expressly provide any right of intervention.[10]

_____

[10] The Ninth Circuit also suggested, along similar lines, that the APA's default rules didn't apply to innocent-spouse cases because the innocent spouse might need our Court's discovery powers to get records from a nonrequesting spouse.  See Wilson, 705 F.3d at 990.  While whistleblower cases have a similar

(continued...)

The Ninth Circuit made much of these distinctions in <u>Wilson</u>. It noted that *de novo* review is appropriate in innocent-spouse cases because they are sometimes heard when no administrative record exists. <u>Wilson</u>, 705 F.3d at 989. But a whistleblower claim will always have at least a small administrative record: the whistleblower's Form 211 and accompanying information. <u>See</u> sec. 7623(b)(6)(C) (requiring the submission of information under penalty of perjury); <u>see also</u> sec. 301.7623-3(e), Proced. & Admin. Regs. (describing the materials that will be included in the administrative record for a whistleblower claim).[11]

2.   <u>Section 6330</u>

We can also look at section 6330(d), which governs our review of nondeficiency collection due process (CDP) cases. Before December 2015, section 6330(d)(1) stated that a "person may, within 30 days of a determination

---

[10](...continued)
administrative structure--screening by a centralized office, no review by an administrative law judge, no right to subpoena witnesses, etc.--the IRS is the party with all of the necessary records; and if the administrative record is incomplete, the whistleblower may move to have it supplemented.

[11] The Secretary promulgated regulations with respect to section 7623(b) that are applicable to whistleblower information submitted on or after August 12, 2014, and to claims for awards under section 7623(b) that are open as of August 12, 2014. Secs. 301.7623-1(f), 301.7623-2(f), 301.7623-3(f), 301.7623-4(e), Proced. & Admin. Regs. The WBO denied Kasper's target claim no later than September 2011, so the regulations do not apply in this case, but they can provide helpful insight.

under this section, *appeal* such determination to the Tax Court * * *." (Emphasis

added.)[12] We interpret this language--admittedly similar to that in section

7623(b)--to require a *de novo* scope of review. See Robinette v. Commissioner,

123 T.C. at 97-98.[13]

---

[12] Section 6330(d)(1) was amended in December 2015 and now reads "[t]he person may, within 30 days of a determination under this section, petition the Tax Court for *review* of such determination * * *." Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. Q, sec. 424(b), 129 Stat. at 3124 (2015) (emphasis added). "Appeal" remains unamended, however, in section 6330(e)(1).

[13] The Eighth Circuit reversed us in Robinette itself and discussed at some length why review under section 6330 should be limited to the administrative record. See Robinette, 439 F.3d at 459-62. The Ninth Circuit then agreed with the Eighth Circuit, and held that "our review is confined to the record at the time the Commissioner's decision was rendered." Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166. The First Circuit held simply that "the administrative record rule also applies to a taxpayer's CDP hearing appeal to the Tax Court." Murphy v. Commissioner, 469 F.3d 27, 31 (1st Cir. 2006), aff'g 125 T.C. 301 (2005). Two other circuits--the Seventh and Third--have specifically declined to decide the issue. See Gyorgy v. Commissioner, 779 F.3d 466, 473 n.5 (7th Cir. 2015); Tuka v. Commissioner, 324 F. App'x 193, 195 n.2 (3d Cir. 2009). We now apply the record rule in CDP cases that are appealable to the First, Eighth, and Ninth Circuits, see Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), but a *de novo* scope of review in all others, see, e.g., Jewell v. Commissioner, T.C. Memo. 2016-239, at *12-*13, though we have also held that evidence outside the administrative record may be irrelevant to the question of whether there has been an abuse of discretion, see Murphy v. Commissioner, 125 T.C. 301, 313-16 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Perhaps sections 6320 and 6330 are another example of a "special statutory review proceeding," 5 U.S.C. sec. 703, with its own scope and standard of review; but this is not the right case to revisit the record rule's application in CDP cases.

Whistleblower cases are just different. Unlike most petitioners coming before the Tax Court, a whistleblower isn't the taxpayer--he isn't seeking relief from his own liabilities or those of his spouse; he is instead requesting an award from the government. The question before us is also whether the IRS collected proceeds as the result of an administrative or judicial action using the whistleblower's information, not whether it could have or should have. See Cooper v. Commissioner, 136 T.C. 597, 600-01 (2011).

We will therefore will limit the scope of our review to the administrative record.

B.      Exceptions

The record rule doesn't always tell us to stop with the record. There are exceptions. The D.C. Circuit has summarized them:

- when agency action is not adequately explained in the record;

- when the agency failed to consider relevant factors;

- when the agency considered evidence which it failed to include in the record;

- when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;

- where there is evidence that arose after the agency action showing whether the decision was correct or not; and

• where the agency's failure to take action is under review.[14]

Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989); see also Wilson, 705 F.3d at 991 (acknowledging that a "reviewing court may require supplementation of the administrative record if it is incomplete" (quoting Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005))); Giamelli v. Commissioner, 129 T.C. 107, 117 (2007) (Wherry, J., concurring) (stating that it is up to the Court to determine the accuracy and completeness of the administrative record, which may require an evidentiary hearing). The gist of these cases is that an agency can't all by itself determine what constitutes the administrative record. And the same is true for whistleblower cases--trial remains available when the parties disagree about the contents of the record because the Commissioner "cannot unilaterally decide what constitutes an administrative record." Whistleblower One 10683-13W v. Commissioner, 145 T.C. 204, 206 (2015) (citing Thompson v. DOL, 885 F.2d 551, 555 (9th Cir. 1989), and Tenneco Oil Co. v. DOE, 475 F. Supp. 199, 317 (D. Del. 1979)). We will allow the record to be supplemented in a whistleblower case if one of the exceptions to the record rule applies.

---

[14] There are least two others--cases that arise under the National Environmental Policy Act and cases where relief is at issue, especially at the preliminary-injunction stage--that we will never see in our Court. See Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989).

II.    Standard of Review

Now that we have decided what evidence to look at, we turn to what evidence we look for.  Since section 7623(b) gives no guidance and we have no caselaw on point, we will again look to the default rules.  The APA tells a reviewing court to reverse agency action that it finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that it finds "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."  5 U.S.C. sec. 706(2)(A), (F).[15]  We have already held that the scope of review in whistleblower cases should *not* be *de novo*, so APA section 706(2)(F) doesn't apply either.  We are left with APA section 706(2)(A) and its abuse-of-discretion standard of review.

This is the same result that we've reached in other nondeficiency bits of our jurisdiction.  In innocent-spouse cases under section 6015(f) we originally held that review for abuse of discretion was proper.  See Porter, 130 T.C. at 122;

---

[15] Paragraphs (B) through (D) of APA section 706(2) relate to agency action that is unconstitutional, outside the agency's scope of authority, or procedurally defective.  Paragraph (E) relates to "formal" agency action (i.e., action that is statutorily required to be determined on the record after opportunity for an agency hearing) that is not supported by substantial evidence.  5 U.S.C. sec. 706(2); see also id. sec. 554(a).  None of these is relevant here.

Ewing, 122 T.C. at 36-37; Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002).[16]

In CDP cases we have also interpreted section 6330 to require a *de novo* standard of review if the validity of the underlying tax liability is at issue, but an abuse-of-discretion standard if it is not. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-82 (2000); see also Ryskamp v. Commissioner, 797 F.3d 1142, 1147 (D.C. Cir. 2015). While this distinction is based on the particular legislative history of section 6330, the same reasoning can be applied to the text here. In section 7623(b) cases the underlying tax liability-- on which the whistleblower's claim is based--is never at issue because we have jurisdiction only to review the Commissioner's determination to grant or deny an award. See Cooper, 136 T.C. at 600. We can neither redetermine the target's tax liability nor direct the Commissioner to proceed with an administrative or judicial action. Id. We will therefore review for abuse of discretion.

---

[16] Section 6015(e)(1) was amended in 2006 to confirm our jurisdiction to determine whether innocent-spouse relief was appropriate under section 6015(f). Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. C, sec. 408(a), 120 Stat. at 3061. In Porter v. Commissioner, 132 T.C. 203, 206-10 (2009), this amendment prompted us to reverse course and hold that *de novo* review was called for. The Ninth Circuit agreed in Wilson. 705 F.3d at 992.

What does this mean? Review for abuse of discretion means that we will not substitute our judgment for the WBO's but will decide whether the agency's decision was "based on an erroneous view of the law or a clearly erroneous assessment of the facts." Fargo v. Commissioner, 447 F.3d 706, 709 (9th Cir. 2006) (quoting United States v. Morales, 108 F.3d 1031, 1035 (9th Cir. 1977) (en banc)), aff'g T.C. Memo. 2004-13.

III.    Merits

We're not quite done with our brief survey of general principles of administrative law as they affect our whistleblower cases. There is another major doctrine that colors our review: Under the Chenery doctrine we can uphold the WBO's determination only on the grounds it actually relied on when making its determination. See Salahuddin v. Commissioner, T.C. Memo. 2012-141, 2012 WL 1758628, at *7 (citing SEC v. Chenery Corp. (Chenery I), 318 U.S. 80, 93-95 (1943)); see also Antioco v. Commissioner, T.C. Memo. 2013-35, at *24-*25; Jones v. Commissioner, T.C. Memo. 2012-274, at *22.[17] The Chenery doctrine is

---

[17] We apply Chenery in CDP cases but not in deficiency cases. Compare Antioco v. Commissioner, T.C. Memo. 2013-35, and Jones v. Commissioner, T.C. Memo. 2012-274, and Salahuddin v. Commissioner, T.C. Memo. 2012-141, with Ax v. Commissioner, 146 T.C. 153, 159-60 (2016) (declining to apply Chenery to a deficiency case). In Ax we reasoned that Congress had authorized us to make our own determinations in deficiency cases, so Chenery must not apply. Ax, 146

(continued...)

an administrative-law principle that says "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." SEC v. Chenery Corp. (Chenery II), 332 U.S. 194, 196 (1947) (describing its holding in Chenery I). This means that the WBO must clearly set forth the grounds on which it made its determination, so that we don't have to guess. See id. We cannot uphold the WBO's determination "simply because findings *might* have been made and considerations *might* be disclosed which *might* justify his ultimate conclusion." Antioco, at *25 (citing Chenery I, 318 U.S. at 93-94).

We'll begin with the WBO's letter to Kasper. Kasper argues that the Chenery doctrine applies and that the copy of the June 2009 denial letter for the

---

[17](...continued)
T.C. at 159-60. The same cannot be said for whistleblower cases. As previously discussed, Congress granted us the authority to review only the WBO's determinations, which we will do only for abuse of discretion. See supra pp. 22-24. And for the application of the Chenery doctrine, a determination in a whistleblower case is much more analogous to a notice of *determination* in a CDP case than to a notice of *deficiency* in a deficiency case. See Comparini, 143 T.C. at 296 (Goeke and Kerrigan, JJ., concurring) ("Congress has not instructed us to treat whistleblower award determinations like notices of deficiency").

target claim that he received in September 2011 was insufficient.[18]  Explaining the

grounds for the WBO's determination to reject Kasper's award claim, the letter

stated that "the information you furnished did not meet our criteria for an award."

It also explained that

> Federal disclosure and privacy laws prohibit us from telling you the specific reason(s) we rejected your claim.  However, we can tell you the most common reasons for not allowing a reward are:
>
> •  Your information was insufficient to begin an investigation.
> •  Your information did not cause an investigation or result in the recovery of taxes, penalties, or fines.
> •  The Internal Revenue Service (IRS) already had the information you provided, or the information was available in accessible public records.
> •  The taxes recovered were too small to warrant a reward.  Our policy states we do not pay rewards less than $100.

This alone is a completely inadequate explanation--it has no reasoning specific to

Kasper's claim, recites only boilerplate, and then states a conclusion.  See Tourus

Records, Inc. v. DEA, 259 F.3d 731, 737 (D.C. Cir. 2001).  It therefore fails to

"articulate a satisfactory explanation" for the WBO's action because it doesn't

explain *why* the WBO decided that Kasper's claim was not eligible for a

---

[18] We note that while we haven't ruled on the issue, a Chenery argument might be waived if it isn't raised.  See Catholic Health Initiatives Iowa Corp. v. Sebelius, 718 F.3d 914, 922 n.6 (D.C. Cir. 2013).  But Kasper raised it here, so we will leave that puzzle for another day.

whistleblower award.  See id. (citing Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

But that's not the end of the analysis.  Administrative law tells a court to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974); see also Altera Corp. v. Commissioner, 145 T.C. 91, 114 (2015). Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any "contemporaneous explanation of the agency decision" contained in the record.  Tourus Records, 259 F.3d at 738-40 (deciding not to remand a case involving a letter with an insufficient explanation of an agency's action because the record contained contemporaneous explanations of the agency's decisionmaking rationale).  Here, the WBO's records--which were stipulated into evidence--show that Kasper's award claim was denied because his tip was about unpaid wages, which Roskelley correctly determined was a Department of Labor issue, not an IRS issue because no tax is owed on unpaid wages.  This rationale was neither arbitrary nor capricious nor an abuse of discretion.  It was based on all of the information provided by Kasper in his Form 211, and we find no error in the rejection of a whistleblower award application that failed to assert an underpayment of tax.  The

WBO therefore--as we view the administrative record--did not abuse its discretion in denying Kasper's claim.

We need to be sensitive, however, to a scenario where the WBO receives a Form 211, sends out the information it contains to other parts of the IRS, doesn't follow up on if or how the information is used, and then denies the claim on the assumption that the whistleblower's tip wasn't acted upon. Limiting our review in such a case to only the administrative record produced by the Commissioner would subvert the whistleblowing statute and undermine the record rule. See Mathia v. Commissioner, T.C. Memo. 2009-120, 2009 WL 1471716, at *16 ("If we were to uphold the Commissioner's determination * * * where the Commissioner has not clearly explained the basis for the exercise of that discretion, we would be condoning a review framework that would encourage the Commissioner to provide as little information as possible about the handling of cases during the period of the * * * request and about the inquiry in response to the request." (quoting Jacobs v. Commissioner, T.C. Memo. 2000-123, 2000 WL 380216, at *8)), aff'd, 669 F.3d 1080 (10th Cir. 2012).

An agency's failure to consider relevant factors is one of the recognized exceptions to the record rule. See supra p. 20. Here, Kasper's Form 3949-A and the IRS's files on the target's bankruptcy were not part of the administrative

record that the Commissioner compiled. Kasper insisted that they should have been. The WBO is charged with determining whether the IRS proceeded with an action using the whistleblower's information and whether that action (or any related actions) led to the collection of proceeds (including settlements). Sec. 7623(b)(1). Kasper's position is that the WBO--in investigating his claim--should have reviewed his Form 3949-A because he referenced it in his Form 211. He likewise argues that both forms "alerted the IRS that a company in bankruptcy was failing to withhold the proper tax for its employees." This means, he says, that the WBO should have reviewed the IRS's file on the bankruptcy of the target when it reviewed his claim.

We agree and find that both the Form 3949-A and the IRS's bankruptcy file were relevant factors that the WBO failed to consider. See, e.g., Whistleblower One 10683-13W, 145 T.C. at 206-07 ("How could evidence related to whether there was a collection of proceeds and whether that collection was attributable to the whistleblower's information *not* be part of any purported administrative record?"); Antioco, at *15 (supplementing the record with information that should have been included but wasn't). Both pieces of evidence are central to Kasper's argument for how the information that he gave to the IRS led to collection of more

tax from the target. This makes them relevant and admissible as supplements to the administrative record.

But relevance gets them admitted; it doesn't mean Kasper wins. Remember that his theory is that the information he provided on his Form 3949-A was used to keep the IRS's proof of claim in the target's bankruptcy proceedings "held open" to give the IRS more time to "find something else" on which to base its claim against the target. He claims that he mailed his Form 3949-A--with substantially the same information as his Form 211--to the IRS's Fresno office in January 2009. He then argues that the Fresno office must have contacted someone in the IRS's solvency group and reported his information because the Form 3949-A listed Epiq Bankruptcy Solutions, LLC, as a financial institution used by the target. And with the bar date--the deadline for filing a proof of claim--looming, Kasper believes the IRS used his information as the basis for its original proof of claim. The Commissioner, on the other hand, argues that Kasper's information was never used and that the IRS merely followed its normal course of business in dealing with the target's bankruptcy.

The bankruptcy files show that the target filed for chapter 11 relief in January 2009 and that the IRS responded by filing its original proof of claim in February 2009, followed by two amendments--one in May and the other in August

2009. This is, in and of itself, fairly common. The bankruptcy courts provide the IRS with notice of all chapter 11 bankruptcy cases regardless of whether the IRS is listed as a creditor. IRM pt. 5.9.8.3 (May 13, 2008). The case is then assigned to an IRS insolvency specialist who must take "primary case actions" within 10 days of being assigned to the case. Id. pt. 5.9.8.4. This may include filing an estimated proof of claim before the bar date to protect the government's interest and provide more time to determine the exact liability. IRM pt. 5.9.13.18.1 (May 20, 2008). This "unassessed" claim is then followed as soon as possible by an amended or supplemental proof of claim with the correct tax liability. Id.; see also IRM pt. 5.9.13.8 (Mar. 1, 2007).

We understand Kasper's suspicion. Roskelley--the classifier who reviewed Kasper's Form 211 when it came through the WBO--was cc'ed on an email about the need for numbers for an amended proof of claim. And the original proof of claim did list employment taxes as a potential outstanding liability. The email chain, however, also shows that the reason for Roskelley's involvement was that he--in his role as an LB&I classifier--had the target's 2007 tax return and wanted to know where to send it.[19] The employment-tax claims in the proof of claim are

---

[19] Once a proof of claim has been filed by the IRS, the taxpayer's returns get flagged and are held until the insolvency department determines what should be

(continued...)

also the result of standard IRS procedure. The target filed for bankruptcy, the IRS was notified, an original proof of claim was filed by the insolvency department including "unassessed" claims for FICA, FUTA, and excise taxes, and an amended proof of claim was later filed that corrected these claims to zero. None of the information provided by Kasper in his Form 3949-A would have changed this. The IRS could not have asserted a claim for employment taxes on the allegedly unpaid wages because unpaid wages aren't taxed. Even though we think it was an error for the WBO not to consider this evidence, we think the error was harmless because the rest of the record shows that the IRS did not proceed with any action resulting in the collection of proceeds using Kasper's information.

---

[19](...continued)
done with them. See IRM pt. 4.1.5.1.20.2 (Oct. 24, 2006).

We therefore hold that the WBO did not abuse its discretion in rejecting Kasper's whistleblower award claim.

<u>Decision will be entered for</u>

<u>respondent</u>.

Reviewed by the Court.

MARVEL, FOLEY, VASQUEZ, GALE, THORNTON, GOEKE, GUSTAFSON, MORRISON, KERRIGAN, BUCH, LAUBER, NEGA, PUGH and ASHFORD, <u>JJ</u>., agree with this opinion of the Court.

PARIS, <u>J</u>., did not participate in the consideration of this opinion.